**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOHAMMAD YUSUF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-01394 |
| v. | ) | |
| | ) | Hon. Joan B. Gottschall |
| | ) | |
| CITY OF CHICAGO, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Dated: July 26, 2022

Respectfully submitted,

Office of the Corporation Counsel

By: *s/ Benjamin H. Cook*
Benjamin H. Cook
Assistant Corporation Counsel

Derek R. Kuhn
Chief Assistant Corporation Counsel

City of Chicago, Department of Law
Employment Litigation Division
2 North LaSalle Street, Suite 640
Chicago, Illinois 60602
(312) 742-3931/744-0898
Benjamin.Cook@cityofchicago.org
Derek.Kuhn@cityofchicago.org

# CONTENTS

INTRODUCTION ..................................................................................................................................1

Factual Background ............................................................................................................................2

    I.    Yusuf's CPD Personnel Form ...............................................................................................2

    II.    Yusuf's Application for Promotion and the Sergeant Promotion Process .................................4

LEGAL STANDARD ...........................................................................................................................5

ARGUMENT ........................................................................................................................................6

    I.    Count I Insufficiently Alleges Title VII Disparate Treatment Based on Plaintiff's Alleged Inability to Change His Racial Designation on Personnel Paperwork. ................................................6

        A.    Plaintiff does not allege that race was the motivating factor in his inability to update his racial designation in his personnel paperwork .................................................................................7

        B.    Plaintiff does not allege that similarly situated employees were allowed to update their racial designation in their personnel paperwork ..............................................................................7

        C.    Plaintiff does not allege an adverse action in his inability to update his racial designation in his personnel paperwork .............................................................................................................8

    II.    Count II Insufficiently Pleads a Title VII Disparate Treatment Claim Based on the CPD's Promotion Practices. ..........................................................................................................................9

    III.    Plaintiff Fails to Plausibly Allege that a Municipal Policy or Practice was the Moving Force Behind a Constitutional Deprivation He Suffered. ..............................................................................11

    IV.    Count III Insufficiently Pleads a Section 1983 Equal Protection Claim. ..............................14

    V.    Count IV Insufficiently Pleads a Section 1981 Discrimination Claim. ....................................15

    VI.    Count V Insufficiently Pleads a First Amendment Claim. ....................................................16

        A.    Plaintiff's First Amendment claim is time-barred ................................................................16

        B.    Plaintiff fails to plausibly allege an underlying First Amendment claim ..............................17

        C.    Plaintiff does not plausibly allege he suffered a deprivation that would likely deter First Amendment activity ...........................................................................................................................19

# Cases

*Alamo v. Bliss*, 864 F.3d 541 (7th Cir. 2017)........................................................................................8

*Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812 (7th Cir. 2019)...............................6

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S. Ct. 2362 (1975) ...................................................9

*Alcorn v. City of Chicago*, No. 17 C 5859, 2018 WL 3614010 (N.D. Ill. July 27, 2018) ...................12

*Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578 (N.D. Ill. 2016)...................................13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................................5, 6, 12

*Baranowska v. Intertek Testing Services NA, Inc.*, No. 19 C 6844, 2020 WL 1701860 (N.D. Ill. April 8, 2020)..........................................................................................................................................5

*Barnhill v. City of Chicago*, 142 F. Supp. 2d 948 (N.D. Ill. 2001)......................................................11

*Barr v. Town of St. John, et al.*, 2:23-CV-335 JD, 2024 WL 3534611 (N.D. Ind. July 24, 2024) .............12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................................6

*Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009)................................................................................17

*Brogsdale v. Torres-Corona*, 23 C 10105, 2024 WL 3052129 (N.D. Ill. June 19, 2024)....................6

*Carmona v. City of Chicago*, No. 15-CV-00462, 2018 WL 1468995 (N.D. Ill. Mar. 26, 2018)................13

*Carol B. v. Waubonsee Cmty. Coll.*, 23 CV 02033, 2024 WL 3069974 (N.D. Ill. June 20, 2024) ...............6

*Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001) .............................................................14

*Cliff v. Bd. of Sch. Comm'rs of Indianapolis, Ind.*, 42 F.3d 403 (7th Cir. 1994) ...............................19

*CNTRST Debt Recovery v. Ybarra*, No. 21 C 2702, 2024 WL 1435099 (N.D. Ill. Apr. 2, 2024)..............3

*Comcast v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020) ......................................15, 16

*Connecticut v. Teal*, 457 U.S. 440, 102 S. Ct. 2525 (1982) ...................................................................9

*Cosby v. Rodriquez*, 23 C 2236, 2024 WL 167711 (N.D. Ill. Jan. 16, 2024)................................13, 18

*Davis v. Carter*, 452 F.3d 686 (7th Cir. 2006).....................................................................................13

*Egger v. Phillips*, 710 F.2d 292 (7th Cir. 1983) .................................................................................19

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ..........................................................................................18

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343 (2009) ...................................................7

*Haley v. Urban Outfitters*, No. 22-1932, 2023 WL 1775670 (7th Cir. 2023)........................................8

*Harris v. Quinn*, 573 U.S. 616, 134 S. Ct. 2618, (2014) ....................................................................17

*Hileman v. Maze*, 367 F.3d 694 (7th Cir. 2004) .................................................................................17

*Hobbs v. Dart*, No. 20-cv-6513, 2021 WL 1906465 (N.D. Ill. May 12, 2021) ....................................8

*Jackson v. Marion County*, 66 F.3d 151 (7th Cir. 1995) ....................................................................13

*Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31*, 585 U.S. 878 (2018)...............18

*Jaros v. Vill. of Downers Grove*, 2020 IL App (2d) 180654, 180 N.E.3d 125......................................18

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382 (7th Cir. 2010) ...........................17

*Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887 (7th Cir. 2018) ...........................................6

*Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892 (7th Cir. 2003) .......................................................8

*Johnson*, 892 F.3d at 895 ......................................................................................................................6

*Jones*.....................................................................................................................................................14

*Jones v. Feinerman*, 2011 WL 4501405 (N.D. Ill. 2011) ...................................................................13

*Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir. 1993) ....................................................................16, 17

*Koty v. DuPage Cnty., Illinois*, 900 F.3d 515 (7th Cir. 2018) ..............................................................9

*Lewis v. Wilkie*, 909 F.3d 858 (7th Cir. 2018)......................................................................................9

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ..............................................................12

*McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783 (7th Cir. 2019) ...........................................15

*McDonald v. Vill. of Winnetka*, 371 F.3d 992 (7th Cir.2004).............................................................15

*Mogan v. City of Chicago*, 21 C 1846, 2022 WL 159732 (N.D. Ill. Jan. 18, 2022).............................16

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ................................................................11, 12

*Mordi v. Zeigler*, No. 3:11-CV-00193-NJR, 2020 WL 2425796 (S.D. Ill. May 12, 2020).................14

*Ocampo v. Remedial Envtl. Manpower, Inc.*, No. 13-cv-06283, 2014 WL 2893190 (N.D. Ill. June 26, 2014) ......................................................................................................................................................5

*Orton-Bell v. Indiana*, 759 F.3d 768 (7th Cir. 2014) .............................................................................7

*Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835 (N.D. Ill. Mar. 24, 2020) ...................... 13, 14

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014) ........................................................................14

*Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563 (1968) .....................18

*Puffer v. Allstate Ins. Co.*, 675 F.3d 709 (7th Cir. 2012) ............................................................... 9, 10

*Reget v. City of La Crosse*, 595 F.3d 691 (7th Cir. 2010) ...................................................................15

*Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614 (7th Cir. 2012) .................................................19

*Small v. Chao*, 398 F.3d 894 (7th Cir. 2005) ........................................................................................17

*Smart v. Ball State University*, 89 F.3d 437 (7th Cir. 1996) ...............................................................8

*Smith v. Chief Judge of Cir. Ct. of Cook Cnty.*, No. 17-CV-08341, 2021 WL 767624 (N.D. Ill. Feb. 26, 2021), aff'd, No. 21-1544, 2022 WL 1238449 (7th Cir. 2022) .......................................................9

*Smith v. City of Chicago*, 3 F.4th 332 (7th Cir. 2021) .........................................................................16

*Smith v. Fruin*, 28 F.3d 646 (7th Cir. 1994) ........................................................................................19

*Spiegel v. McClintic*, 916 F.3d 611 (7th Cir. 2019) .............................................................................12

*Srail v. Vill. of Lisle*, 588 F.3d 940 (7th Cir.2009) ..............................................................................15

*Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997 (7th Cir. 2000) .....................................................8

*Sullivan v. Ramirez*, 360 F.3d 692 (7th Cir. 2004) ..............................................................................19

*Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464 (7th Cir. 2020) ...................... 6, 12

*Taylor v. Bd. of Educ. of Chi.*, 2020 U.S. Dist. LEXIS 155741 (N.D. Ill. Aug. 27, 2020) .....................6

*Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310 (N.D. Ill. 2016) .....................................13

*Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293 (7th Cir. 2010) .................................................13

*Thomas v. Neenah Joint Sch. Dist.*, 2023 U.S. App. LEXIS 18493 (7th Cir. 2023) ...........................11

*United States v. City of Chicago*, No. 73 C 661, 1979 WL 45 (N.D. Ill. 1979) .....................................9

*Warren v. Millennium Hotels & Resorts*, 692 F. Supp. 3d 828 (N.D. Ill. 2023) ................................7

*Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 108 S. Ct. 2777 (1988) .....................................9

*Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003) ................................................................................15

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013) ...................................................................... 3, 5

*Wilson v. Estate of Burge*, 667 F. Supp. 3d 785 (N.D. Ill. 2023) .......................................................17

*Wilson v. Giesen*, 956 F.2d 738 (7th Cir.1992) ...................................................................................16

*Winchester v. Marketti*, 2012 WL 2076375 (N.D. Ill. 2012) .......................................................13, 14

*Woodruff v. Mason*, 542 F.3d 545 (7th Cir. 2008) .............................................................................17

*Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412 (7th Cir.1988) ....................................................18

**Statutes**

42 U.S.C. § 1981 ....................................................................................................................................11

First Amendment to the U.S. Constitution ...........................................................................................11

Fourteenth Amendment to the U.S. Constitution .................................................................................11

Title VII, 42 U.S.C. § 2000e *et seq.* .......................................................................................................6

Defendant City of Chicago (hereinafter "the City"), by and through its attorney, the Office of the Corporation Counsel, respectfully submits its Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and states the following:

## INTRODUCTION

Plaintiff Mohammad Yusuf ("Plaintiff" or "Yusuf") alleges that he self-selected the racial designation of "Caucasian" on an employment form that he submitted to the Chicago Police Department ("CPD") in 2004, despite not identifying as white. Plaintiff alleges that on an unspecified date thereafter, he requested that his racial designation be updated from white to African-American, a category that Plaintiff admits was a choice in 2004. Without identifying any specific policy, Plaintiff cursorily asserts that his inability to update his racial demographic information constitutes "a blanket prohibition against amending officers' racial designation." Plaintiff further cursorily alleges, without any factual support, that his self-selected racial designation on a form that he filled out and submitted in 2004 caused his promotion to sergeant to be delayed in 2022.

Plaintiff sets forth five Counts in his Complaint for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") for his inability to update his racial designation (Count I); violation of Title VII for failure to promote (Count II); violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. §1983 ("Section 1983") due to his inability to update his racial identity designation (Count III); violation of 42 U.S.C. §1981 ("Section 1981") due to his non-promotion and inability to update his racial identity designation (Count IV); and violation of the First Amendment of the U.S. Constitution pursuant to Section 1983 for government compelled speech due to his inability to update his racial designation (Count V). [1]

---

[1] Plaintiff also requests that the City of Chicago "indemnify the Defendant," which is styled as Count 6. Complaint, Dkt. No. 1, ¶ 82. As the City is the sole defendant in this action, there is no separate party to indemnify, and Plaintiff's request is moot.

Plaintiff's Title VII disparate treatment claim based on Plaintiff's alleged inability to change his racial designation on personnel paperwork fails because plaintiff does not allege that race was the motivating factor in his inability to update his racial designation in his personnel paperwork and because he does not allege that similarly situated employees were allowed to update their racial designation. Plaintiff's allegations undermine his claim for failure to promote because he is admittedly not a member of the class that he alleges has been injured (white). Plaintiff further fails to set forth facts to support any plausible inference that any decisionmaker accessed, considered, or relied upon his personnel paperwork in making promotional decisions, let alone that his racial designation as set forth on his personnel form negatively affected his promotional opportunities.

Plaintiff's claims for violation of the Equal Protection Clause of the Fourteenth Amendment, Section 1981, and the First Amendment pursuant to Section 1983 fail because he does not plausibly allege that a municipal policy or practice was the moving force behind a constitutional deprivation he suffered. Rather, Plaintiff cannot identity any written policy related to prohibiting employees from updating their racial demographic information and does not allege any other employee attempted to do so. Plaintiff further fails to allege underlying violations of the Equal Protection Clause of the Fourteenth Amendment, Section 1981, or the First Amendment.

**FACTUAL BACKGROUND**

### I. Yusuf's CPD Personnel Form

Plaintiff has been employed by CPD as a Police Officer since 2004. *See* Plaintiff's Complaint ("Complaint"), Dkt. No. 1, ¶ 2. When he was first hired as a Police Officer, Yusuf was presented with personnel paperwork to complete. *Id.* at ¶ 10. The personnel paperwork included a form with a section for indicating an employee's racial identity. *Id.* The form included several racial designation options, including "Caucasian, Hispanic, or African American." *Id.*

Yusuf "identifies as Egyptian and African-American." *Id.* at ¶ 2. When completing his personnel paperwork in 2004, however, Yusuf self-selected "Caucasian" as his racial designation. *Id.* at ¶ 11. Yusuf selected "Caucasian" even though he did "not identify[] as white," and his self-identified designation of "African American" was available for selection. *Id.* at ¶¶ 10-11. Yusuf alleges, without elaborating, that he was "compelled" to select "Caucasian" on the 2004 form. Complaint, Dkt. No. 1, ¶ 11.

Yusuf alleges that at some point after submitting his original form, he requested to "alter" or "update" his racial identity designation on his personnel form. *See id.* at ¶ 15; Plaintiff's 2023 submitted Personnel Contact and Data Form ("2023 Personnel Form"), attached hereto as **Exhibit 1**.[2] Yusuf further alleges that the current personnel form includes more distinct Race/Ethnicity designation options than the 2004 version of the form did.[3] Complaint, Dkt. No. 1, ¶ 13. Yusuf's requested "update" to his personnel form is that his racial designation be changed from "Caucasian" to "African American," a designation that was already available when he was hired. *Id.* at ¶¶ 2, 10; 2023 Personnel Form, attached hereto as Exhibit 1. Yusuf alleges that he has been unable to change his racial designation because "a blanket prohibition against amending officers' racial designation exists" at CPD. Complaint, Dkt. No. 1, ¶ 14. Though Yusuf characterizes this alleged "blanket prohibition" as a "Racial Identity Policy Ban," he does not allege any specific policy by the CPD or the City implementing such a ban. *See id.* ¶¶ 18, 20.

---

[2] In evaluating the sufficiency of a complaint, a court may consider documents that are "central to the complaint and are referred to in it," without converting a 12(b)(6) motion into a motion for summary judgment. *CNTRST Debt Recovery v. Ybarra*, No. 21 C 2702, 2024 WL 1435099, at *1 n.2 (N.D. Ill. Apr. 2, 2024) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). Here, Yusuf's Complaint repeatedly refers to his request to revise his personnel file with an "updated" racial identity designation, *see, e.g.*, Complaint, Dkt. No. 1, ¶¶ 15-18 59, 69, 77. He has therefore incorporated his requested updated 2023 Personnel Form into his complaint and the Court may take judicial notice of its contents.

[3] Yusuf alleges that the current personnel form "allows officers to select from over nine different racial designations." Complaint, Dkt. No. 1, ¶ 13. The Race/Ethnicity section of the form, however, includes six different Race/Ethnicity designations, one designation for "Two or more races," and one designation for "I choose not to disclose." 2023 Personnel Form, attached hereto as Exhibit 1.

II. **Yusuf's Application for Promotion and the Sergeant Promotion Process**

Plaintiff alleges that since 1998, the CPD promotion process for the position of Sergeant consists of a pass/fail written examination, followed by assessment exercises for candidates who pass the exam. Complaint, Dkt. No. 1, ¶ 37; *see also City of Chicago Police Department Sergeant and Lieutenant Promotion Processes: Review, Evaluation, and Recommendations*, DCI Consulting Group ("DCI Report"), attached hereto as **Exhibit 2**, at 20.[4] Candidates are then rank ordered on the promotion eligibility list based on their assessment exercise scores. Complaint, Dkt. No. 1, ¶ 37; DCI Report, attached hereto as Exhibit 2, at 20. In addition to rank-order promotions, candidates who pass the test can also be promoted to Sergeant via a "merit process." Complaint, Dkt. No. 1, ¶ 37; DCI Report, attached hereto as Exhibit 2, at 20. In the merit process, nominators submit candidates for review, who are then interviewed and ranked by the Merit Board and selected from merit list in tier order by the CPD Superintendent. Complaint, Dkt. No. 1, ¶ 42; DCI Report, attached hereto as Exhibit 2, at 20. Ranked eligibility list promotions make up at least 70% of the total promotions to the Sergeant position, with merit process promotions making up the rest of the total promotions, up to a maximum of 30%. Complaint, Dkt. No. 1, ¶ 52; DCI Report, attached hereto as Exhibit 2, at 20.

Yusuf alleges, on belief only, that the merit process was changed in 2021 to explicitly favor African American and Hispanic candidates. Complaint, Dkt. No. 1, ¶ 43. He further alleges, again on belief, that access to promotional opportunities depends on a candidate's documented identity characteristics and that a candidates' racial designation impacts their ability to qualify for merit process promotions. *Id.* at ¶¶ 9, 26. However, Yusuf nowhere alleges that merit process nominators have access to, consider, or rely upon CPD personnel forms in making their submission decisions. *See generally, id.*

---

[4] Yusuf attached this report to his Complaint via URL link. Complaint, Dkt. No. 1, ¶ 47 n.3.

Yusuf alleges that he took the Sergeant's exam in 2019 and "scored in the first promotional tier." Complaint, Dkt. No. 1, ¶ 49. Yusuf does not indicate his position on the rank-order eligibility list, and it is unclear from the pleadings whether Yusuf is alleging that he was nominated for merit promotion and placed in the first tier of the merit list. *See id.* Yusuf further alleges that his personnel paperwork reflects his racial designation as Caucasian, though he does not allege that nominators accessed, considered, or relied upon his personnel paperwork in evaluating him for the merit process. *Id.* at ¶ 48. Yusuf similarly does not allege that nominators perceived or considered him to be Caucasian. *Id.*

Yusuf alleges, again on belief, that some "African American officers" have been promoted via the merit process "on the basis of their race," despite being "not suitable for the responsibilities of a sergeant." *Id.* at ¶ 56.[5] Yusuf further alleges on belief that these "less qualified candidates" bypassed him for promotion. *Id.* Yusuf claims that his perceived racial designation should be corrected and that he should be favored in the merit process. *Id.* at ¶¶ 57, 62. He further alleges that he should have been promoted to Sergeant in April 2022. *See* Plaintiff's Charge filed with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 18, 2023 ("Charge"), attached hereto as **Exhibit 3**.[6]

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Taha v. Int'l Brotherhood of Teamsters, Local 781*,

---

[5] Yusuf also vaguely alleges that "it is believed" that some of the merit process promotions are "questionable," and that the merit process has "faced numerous legal challenges and allegations of unfairness" and " has been criticized as unfair." Complaint, Dkt. No. 1, ¶¶ 39, 45, 55. None of these allegations are anything more than conclusory innuendo attributed to unidentified third parties, and they are therefore not entitled to be assumed true. *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951.

[6] Yusuf is bringing Title VII claims and has alleged that he filed an EEOC charge and received a Right to Sue notice. Complaint, Dkt. No. 1, ¶ 7. He has therefore incorporated his underlying EEOC charge into his complaint. *Williamson*, 714 F.3d at 436; *see also Baranowska v. Intertek Testing Services NA, Inc.*, No. 19 C 6844, 2020 WL 1701860, at *2 (N.D. Ill. April 8, 2020)(courts may consider the relevant EEOC records in addition to the complaint's allegations); *Ocampo v. Remedial Envtl. Manpower, Inc.*, No. 13-cv-06283, 2014 WL 2893190, at *2 (N.D. Ill. June 26, 2014).

947 F.3d 464, 469 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court accepts well-pleaded allegations of fact as true and draws all reasonable inferences in the favor of the plaintiff but may disregard legal conclusions. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). If the allegations fail to raise the right to relief "above the speculative level," dismissal is appropriate. *Id.* The Federal Rules of Civil Procedure provide that a plaintiff cannot "unlock the doors of discovery" when "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

### I.   Count I Insufficiently Alleges Title VII Disparate Treatment Based on Plaintiff's Alleged Inability to Change His Racial Designation on Personnel Paperwork.

Title VII makes it unlawful for an employer to discriminate against employees on the basis of a number of protected characteristics, including race. Title VII, 42 U.S.C. § 2000e-2(a)(1); § 2000e-3(a); *Carol B. v. Waubonsee Cmty. Coll.*, 23 CV 02033, 2024 WL 3069974, at *5 (N.D. Ill. June 20, 2024). "[T]he singular question that matters in a discrimination case" is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). The *McDonnell Douglas* test, however, "remains an efficient way to organize, present, and assess evidence in discrimination cases." *Id.*; *see also Taylor v. Bd. of Educ. of Chi.*, 2020 U.S. Dist. LEXIS 155741, *33–*34 (N.D. Ill. Aug. 27, 2020). To establish a prima facie case under *McDonnell Douglas*, a plaintiff must plausibly allege that they "(1) are members of a protected class; (2) performed reasonably on the job in accord with their employer['s] legitimate expectations; (3) were subjected to an adverse employment action despite their reasonable performance; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer." *Johnson*, 892 F.3d at 895; *see also Warren*

*v. Millennium Hotels & Resorts*, 692 F. Supp. 3d 828, 831 (N.D. Ill. 2023) (a plaintiff must "aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [race].)" Here, Plaintiff fails to plausibly allege that similarly situated employees were allowed to update their racial designations or that he suffered an adverse action in his inability to update his own racial designation.

### A. Plaintiff does not allege that race was the motivating factor in his inability to update his racial designation in his personnel paperwork

To maintain a Title VII discrimination claim, the protected class consideration – in this case, race – must have been a "motivating factor" for the plaintiff's adverse action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2345 (2009). Here, Yusuf completely fails to allege any racial motivation in his inability to update his racial designation. *See generally*, Complaint, Dkt. No. 1. Yusuf attributes this inability to what he characterizes as a "Racial Identity Policy Ban," (despite failing to identify any written policy) which he alleges is "arbitrarily" maintained by the CPD and amounts to a "blanket prohibition against amending officers' racial or ethnic identity in personnel records." *Id.* at ¶¶ 14, 59. Therefore, Plaintiff's own allegations indicate the "Policy" is without any particular motivation and impacts employees of all races equally. This is clearly insufficient to plausibly suggest that the CPD's alleged "Policy" was racially motivated. Because Plaintiff has not alleged any racial motivation whatsoever for the alleged employment action, he cannot maintain his claim.

### B. Plaintiff does not allege that similarly situated employees were allowed to update their racial designation in their personnel paperwork

When considering whether an in individual is 'similarly situated' in a Title VII context, a plaintiff "must at least show that [his] 'comparator' (1) 'dealt with the same supervisor,' (2) 'w[as] subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him].'" *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014). Here, Plaintiff alleges that CPD "categorically"

enforced a "blanket prohibition" against any officer amending their racial or ethnic identity. Complaint, Dkt. No. 1, ¶¶ 14, 20. Therefore, according to Plaintiff's own allegations, all CPD employees were subject to the same policy, regardless of race. As a result, Plaintiff has failed to adequately allege the existence of any comparators, much less any similarly situated employees who were treated more favorably than he was, and he cannot maintain his claim.

### C. Plaintiff does not allege an adverse action in his inability to update his racial designation in his personnel paperwork

For purposes of Title VII, an "adverse employment action" is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quoting *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) (alteration in original)). Actions that alters the employee's working conditions in a "humiliating, unsafe, or otherwise negative way" can qualify. *Hobbs v. Dart, No.* 20-cv-6513, 2021 WL 1906465, at *13 (N.D. Ill. May 12, 2021); *Haley v. Urban Outfitters*, No. 22-1932, 2023 WL 1775670, at *8 (7th Cir. 2023). Courts have determined that "not everything that makes an employee unhappy is an actionable adverse action … [o]therwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996).

Here, Plaintiff alleges that the CPD has refused to allow him to "alter his racial designation within the department." Complaint, Dkt. No. 1, ¶¶ 15, 59. In and of itself, however, Plaintiff's racial designation has no impact on any of the terms or conditions of his employment, and his inability to update his designation did not create any "quantitative or qualitative change in the terms or conditions of employment." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003) (affirming summary judgment on a retaliation claim because the denial of a benefit "and the enforcement of a pre-existing rule" is not a materially adverse action). More concrete actions, such as the denial of a preferred schedule or failure to provide a locker, have routinely been found not to constitute a materially adverse

action. *See, e.g., Smith v. Chief Judge of Cir. Ct. of Cook Cnty.*, No. 17-CV-08341, 2021 WL 767624, at *9 (N.D. Ill. Feb. 26, 2021), aff'd, No. 21-1544, 2022 WL 1238449 (7th Cir. 2022) ("The denial of [plaintiff's] preferred schedule did not create an 'injury or harm.'"); *Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018) (failure to provide a locker, delayed paycheck, and a short paycheck did not constitute an adverse action); *Koty v. DuPage Cnty., Illinois*, 900 F.3d 515, 521 (7th Cir. 2018) (generally changing an employee's shift is "not considered a materially adverse employment action[.]"). Because Plaintiff has not plausibly alleged the existence of an adverse action in his inability to update his racial designation, his claim should be dismissed.

## II. Count II Insufficiently Pleads a Title VII Disparate Treatment Claim Based on the CPD's Promotion Practices.

In Count II, Plaintiff attempts to bring a "pattern or practice" Title VII disparate treatment claim, based on the CPD's promotion practices for the Sergeant position.[7] Plaintiff cannot sustain his claim, however, as he has failed to plausibly allege that he is a member of a protected class that was subjected to an adverse employment action.

As a threshold matter, Plaintiff fails to allege that he is a member of the protected class that has suffered the alleged adverse employment action. Plaintiff's allegations make clear that he is alleging injury to *Caucasian* candidates for the Sergeant position. *See* Complaint, Dkt. No. 1, ¶¶ 43 (alleging that

---

[7] Even if Plaintiff is attempting to bring a disparate impact claim, his claim fails. To sufficiently allege that a particular employment practice causes a disparate impact, "the plaintiff is 'responsible for isolating and identifying the specific employments practices that are allegedly responsible for any observed statistical disparities.'" *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 717 (7th Cir. 2012) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994, 108 S. Ct. 2777 (1988)). Plaintiff characterizes his inability to change his racial designation as a "Racial Identity Policy Ban," but fails to point to any specific CPD practice or policy. Complaint, Dkt. No. 1, ¶ 20. In addition, disparate impact analysis turns on "whether or not *the total selection process* has an adverse impact," *i.e.*, whether the entire Sergeant promotion procedure, including examination, rank order eligibility assessment, and merit process, had an adverse impact. *United States v. City of Chicago*, No. 73 C 661, 1979 WL 45, at *8 (N.D. Ill. 1979) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S. Ct. 2362, 2375 (1975)) (emphasis added); *see also Connecticut v. Teal*, 457 U.S. 440, 458, 102 S. Ct. 2525, 2536 (1982) (J. Powell, dissenting). Plaintiff's allegations concern only the number of Caucasian applicants who were promoted via the merit process, without comparison to the whole pool of merit list candidates, ranked order candidates, or total applicants. *See* Complaint, Dkt. No. 1, ¶¶ 52-54. Therefore, his allegations are insufficient to plausibly allege a disparate impact violation.

the merit process is meant to "increase Black and Latino representation in supervisory roles"), 56 (alleging that despite the "purported race-neutral" merit process, less qualified candidates are promoted "based on their race," particularly "African American officers"), 62 (alleging that Plaintiff was "passed over" for promotion "based on" his designation of Caucasian). It is equally clear from Plaintiff's complaint, however, that he is not, and does not consider himself to be, Caucasian. *See id.* at ¶¶ 2 (alleging that Plaintiff's race is "North African" and he "identifies as Egyptian and African-American"), 62 (alleging that Plaintiff's racial designation of Caucasian is "incorrect"). As a result, Plaintiff has pled himself out of court, because he is admittedly *not* a member of the class that he alleges has been injured.

Plaintiff also fails to plausibly allege that he was even considered to be Caucasian in the Sergeant promotion process. He does allege that he self-selected the "Caucasian" designation on his initial personnel paperwork when he joined the CPD in 2004. *Id.* at ¶ 11. He does not allege however, that merit process nominators, the merit board, or anyone else at the CPD, reviewed and considered his personnel paperwork, or even had access to it, as part of the promotion process. *See generally id.* Plaintiff likewise fails to allege a basis to plausibly suggest that nominators, the merit board, or anyone else at the CPD actually *considered* him to be Caucasian, independent of his paperwork. Without any allegations that plausibly suggest that nominators or merit board member considered Plaintiff to be Caucasian and relied on that impression in their merit process decisions, Plaintiff's claim that he was "passed over" based on the racial designation in is paperwork is merely conclusory and cannot maintain a Title VII claim.

In addition, to maintain a pattern or practice claim, Plaintiff must plausibly allege regular and purposeful discrimination against a protected group. *Puffer*, 675 F.3d at 717. Plaintiff, however, has not alleged any facts to support an inference that the CPD had any reason or inclination to discriminate against Caucasian officers. At most, Plaintiff has alleged that CPD intended for the "Merit System" to

"particularly benefit minority candidates" "who may not excel in testing." Complaint, Dkt. No. 1, ¶ 38. However, the Merit System was admittedly open to candidates of all races (*Id.* at ¶ 54), and an attempt to reduce adverse impact on minority applicants by itself does constitute intentional discrimination. *Barnhill v. City of Chicago*, 142 F. Supp. 2d 948, 966-67 (N.D. Ill. 2001) ("The Merit Component was intended as a means of potentially correcting possible testing biases, and leveling the playing field ex ante. That does not, however, mean that the City intended to discriminate against Caucasians. . . . evidence that the City opted for the Merit Component in order to reduce the adverse impact of prior examinations on minorities does not sway this court."). Therefore, Plaintiff has failed to sufficiently allege any pattern or practice of purposeful discrimination against Caucasian employees by the CPD.

### III. Plaintiff Fails to Plausibly Allege that a Municipal Policy or Practice was the Moving Force Behind a Constitutional Deprivation He Suffered.

Plaintiff alleges in Counts III, IV and V, that the City violated his rights under the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. Section 1981, and the First Amendment, respectively.[8] Pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), a municipality cannot be liable for constitutional violations under Section 1983 unless official government policy inflicts the injury. *Id.*, at 694. To establish *Monell* liability under Section 1983, a Plaintiff must establish: "(1) he was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation." *Thomas v. Neenah Joint Sch. Dist.*, 2023 U.S. App. LEXIS 18493, *6 (7th Cir. 2023) (internal quotations and citations omitted).

---

[8] Section 1981 provides no private right of action against state actors. Accordingly, Plaintiff must bring his Section 1981 claim *via* Section 1983 and set forth allegations that meet the *Monell* pleading standard. *See Campbell v. Forest Preserve Dist. Of Cook Cnty.*, 752 F.3d 665, 671 (7th Cir. 2014).

"Municipalities may be sued only for their own violations of federal law, however, and cannot be held vicariously liable for the constitutional torts of their employees."

There are three types of municipal action that can support *Monell* liability: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (internal quotation omitted). At the pleading stage, to state a *Monell* claim against the City, Plaintiff is required to "plead factual content that allows the court to draw the reasonable inference" that the City maintained a policy, custom, or practice of intentional discrimination against a class of persons to which Plaintiff belonged. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1949; *Monell*, 436 U.S. at 694).

Here, Plaintiff baldly asserts that the City maintains a "Racial Identity Policy Ban." Complaint, Dkt. No. 1, ¶ 20. Despite Plaintiff's use of capitalization, Plaintiff has not and cannot identify any express written policy maintained by the City related to employees' ability to update their demographic information. As a result, Plaintiff's *Monell* claim fails to the extent he intends to proceed under an express policy theory. *See Barr v. Town of St. John, et al.*, 2:23-CV-335 JD, 2024 WL 3534611, at *9 (N.D. Ind. July 24, 2024)(holding the Plaintiff "has not stated a plausible *Monell* claim under the express policy theory" where he failed to identify a *written* policy); *Brogsdale v. Torres-Corona*, 23 C 10105, 2024 WL 3052129, at *5 (N.D. Ill. June 19, 2024)(*citing Alcorn v. City of Chicago*, No. 17 C 5859, 2018 WL 3614010, at *15 (N.D. Ill. July 27, 2018) (explaining that an express policy requires showing either explicit language in the policy that violates someone's rights or the omission of language in a policy that violates someone's rights). *Taha*, 947 F.3d at 469 (quoting *Iqbal*, 556 U.S. at 678)(A complaint must plead "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" It is not

sufficient for a plaintiff to tender "'naked assertions' devoid of 'further factual enhancement.'") (internal quotations and citations omitted).

To the extent Plaintiff intends to set forth a pattern and practice theory, his *Monell* claim is nevertheless insufficiently plead. In the absence of an explicit unlawful policy, a city may be liable for a widespread custom, such as when a plaintiff "show[s] a series of bad acts and invit[es] the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995). A plaintiff must thus allege "a general pattern of repeated behavior" as opposed to "a mere isolated event." *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006). And though no "bright-line rules defin[e] a 'widespread custom,'" the Seventh Circuit has stressed that "one instance is, or in some cases even three instances are, insufficient to 'demonstrate that there is a policy at issue rather than a random event.'" *Carmona v. City of Chicago*, No. 15-CV-00462, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018) (quoting *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010)); *Cosby v. Rodriquez*, 23 C 2236, 2024 WL 167711, at *18 (N.D. Ill. Jan. 16, 2024). "Courts in this district regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered." *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. Mar. 24, 2020); (quoting *Carmona*, 2018 WL 306664, at 2; *see also Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at 2 (N.D. Ill. 2016) (rejecting *Monell* claim because plaintiff's own experiences were the only allegations of misconduct); *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at 4 (N.D. Ill. 2016) (rejecting *Monell* claim because plaintiff's own experiences were the only allegations of misconduct); *Winchester v. Marketti*, 2012 WL 2076375, at 4 (N.D. Ill. 2012) ("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."); *Jones v. Feinerman*, 2011 WL 4501405, at *6 (N.D. Ill. 2011).

Here, Plaintiff alleges that he was personally unable to update his demographic information after submitting documents to CPD and requesting that his demographic information be updated. Complaint, Dkt. No. 1, ¶¶ 17-18. Plaintiff does not set forth any example of any other individual who was unable to update their demographic information with CPD. *See generally,* Complaint, Dkt. No. 1. Accordingly, the result here should be the same as in *Petropoulos*, *Arita*, *Winchester*, and *Jones*, and the Court should dismiss Plaintiff's *Monell* claims for failing to plausibly allege a basis for municipal liability. Plaintiff has not sufficiently set forth facts to support a *Monell* claim under any theory, and the Court should dismiss Plaintiff's Fourteenth Amendment Equal Protection Clause, Section 1981 and First Amendment claims.

## IV.    Count III Insufficiently Pleads a Section 1983 Equal Protection Claim.

Plaintiff's claim for a violation of the Equal Protection clause of the Fourteenth Amendment fails for the additional reason that Plaintiff has not sufficiently alleged he suffered an underlying constitutional violation. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.") Plaintiff alleges that the City violated his rights under the Equal Protection Clause of the Fourteenth Amendment when he was unable to update his demographic information. In order to maintain his claim, Plaintiff must plausibly allege that the policy in question "had a discriminatory effect," which means that he must plausibly allege that he is a member of a protected class, that he was treated differently from similarly situated members of the unprotected class, and that he was treated differently because of his protected status. *Mordi v. Zeigler*, No. 3:11-CV-00193-NJR, 2020 WL 2425796, at *12 (S.D. Ill. May 12, 2020) (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001)).

As noted in Section I.B. above, Plaintiff has not alleged that he was treated differently than others similarly situated. Plaintiff's own allegations make clear that any CPD policy on the matter was enforced as a "blanket" policy, and that all officers would have been subject to the same "categorical"

refusal to change their race and its alleged impact. Complaint, Dkt. No. 1, ¶¶ 14, 20. Plaintiff alleges no facts with respect to the specific impact on Middle Eastern/North African/mixed race officers other than himself, nor has he alleged any comparators from outside his class who were treated differently. *See id.* at ¶¶ 67-68.

Plaintiff appears to allege that the deferential treatment arises from the CPD's alleged difference in approach of allowing officers to change their gender designation but not their racial designation. *Id.* at ¶¶ 23, 69. This comparison is completely inapposite, however. To constitute similarly situated members an unprotected class, the persons alleged to have been treated more favorably "must be identical or directly comparable to the plaintiff in all material respects." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citing *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir.2009)). "While this is not a 'precise formula,' it is nonetheless 'clear that similarly situated individuals must be very similar indeed.'" *Id.* (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir.2004)). Plaintiff cannot use CPD *gender* classification rules for all employees, including himself, to attempt to claim that the CPD's blanket *racial* classification rules treated him differently on the basis of his race. As a result, Plaintiff cannot maintain his equal protection claim.

**V. Count IV Insufficiently Pleads a Section 1981 Discrimination Claim.**

Similarly, Plaintiff has failed to allege an underlying violation of Section 1981 to support his Section 1981 claim *via* Section 1983. Claims brought under Section 1981 are analyzed using the same standard as Title VII employment discrimination claims. *McCurry v. Kenco Logistics Servs.*, LLC, 942 F.3d 783, 788 (7th Cir. 2019); *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003). To maintain a Section 1981 racial discrimination claim, however, a plaintiff bears the higher burden of showing that race was a *but-for* cause of his injury. *Comcast v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020).

As noted in Section I.A. above, Plaintiff completely fails to allege any racial causation for his injuries, much less the existence of but-for causation. Rather, Plaintiff alleges that his injuries resulted

from policies that applied to all CPD employees, regardless of race. Complaint, Dkt. No. 1., ¶ 59. But-for causation is an essential element of Plaintiff's Section 1981 claims, and because he has failed to plausibly allege that race was the but-for cause of his alleged injuries, his claim should be dismissed. *Comcast*, 589 U.S. at 341.

## VI. <u>Count V Insufficiently Pleads a First Amendment Claim.</u>

Plaintiff brings a First Amendment claim pursuant to Section 1983, alleging that the City compelled him "to identify with a race that conflicts" with his own racial identity. Complaint, Dkt. No. 1, ¶¶ 11, 81. Plaintiff self-selected his racial designation in 2004, however, and chose not to select the category of "African-American," which was an available choice at that time. *Id.* at ¶ 10. Plaintiff's First Amendment claim should be dismissed because it is time-barred; Plaintiff's speech was made in his capacity as a public employee; because Plaintiff's speech was unrelated to a matter of public concern; and Plaintiff has not alleged he was subjected to any deprivation that would deter an ordinary person from engaging in protected speech.

### A. Plaintiff's First Amendment claim is time-barred

As a preliminary matter, Plaintiff's First Amendment claim is time-barred. Section 1983 claims are governed by the forum state's statute of limitations for personal injury claims, which in Illinois is two years. *Mogan v. City of Chicago*, 21 C 1846, 2022 WL 159732, at *8 (N.D. Ill. Jan. 18, 2022) (citing *Smith v. City of Chicago*, 3 F.4th 332, 335 (7th Cir. 2021)). A Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993) (quoting *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir.1992)). Determining the accrual date of a Section 1983 claim "proceeds in two steps. First, a court must identify the injury. Next, it must determine the date on which the plaintiff could have sued for that injury. That date should coincide with the date the plaintiff knows or should know that [his] rights

were violated." *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004) (citing *Kelly*, 4 F.3d at 511) (citation omitted).

Here, Plaintiff alleges that when he became a police officer in 2004, he was "compelled to identify as Caucasian, despite not identifying as white." Complaint, Dkt. No. 1, ¶¶ 2, 10, 11. Accordingly, Plaintiff was aware of his claim in 2004, approximately 20 years before he filed suit. A plaintiff can plead himself or herself out of court on a statute of limitation basis if the face of the complaint reveals that the claim is time-barred. *Jay E. Hayden Found. v. First Neighbor Bank*, N.A., 610 F.3d 382, 383 (7th Cir. 2010); *see also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("Although the statute of limitations is ordinarily an affirmative defense that must be pleaded under Fed. R. Civ. P. 8(c), a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred.") *Wilson v. Estate of Burge*, 667 F. Supp. 3d 785, 816 (N.D. Ill. 2023). Given that Plaintiff filed his Complaint approximately 18 years after the statute of limitations elapsed, Plaintiff has pled himself out of court, and the Court should dismiss Plaintiff's First Amendment Claim as time-barred.

### B. Plaintiff fails to plausibly allege an underlying First Amendment claim

A First Amendment claim requires: 1) that the plaintiff engaged in constitutionally protected speech; 2) that "he suffered a deprivation that would likely deter First Amendment activity in the future"; and 3) that the plaintiff's speech "was 'at least a motivating factor' in the Defendant['s] decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

Plaintiff did not engage in protected speech. Under the First Amendment, speech on matters of public concern may be restricted only if "'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees' outweighs 'the interests of the [employee], as a citizen, in commenting upon matters of public concern.'" *Harris v. Quinn*, 573 U.S. 616, 653, 134 S. Ct. 2618, 2642 (2014) (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will*

*Cnty., Illinois*, 391 U.S. 563, 568 (1968)). *Pickering* and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment. (internal citations omitted).

A government entity has broader discretion to restrict speech when it acts in its role as an employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Id.*; *Jaros v. Vill. of Downers Grove*, 2020 IL App (2d) 180654, ¶ 82, 180 N.E.3d 125, 146.

Employee speech is unprotected, however, if it is not on a matter of public concern. *Pickering*, 391 U.S. at 568; *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006); *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 419 (7th Cir.1988) (When a public employee speaks to matters addressing only his own employment conditions, the First Amendment is not implicated); *Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31*, 585 U.S. 878, 905 (2018)(public employee speech is largely unprotected by the First Amendment if it is part of what the employee is paid to do, or if it involved a matter of only private concern).

Here, Plaintiff fails to plausibly allege that he was speaking as a private citizen when he voluntarily selected his racial designation on an *employment form* or that his personal racial designation related to a *public* concern. Complaint, Dkt. No. 1, ¶¶ 23-24, 81. Rather, this speech is precisely the type of speech that "owes its existence to a public employee's professional responsibilities" that is made by a public employee and does not involve matter of public concern. *See Garcetti*, 547 U.S. at 411, 126 S. Ct. at 1954; *Cosby*, 23 C 2236, 2024 WL 167711, at *13 (emails to an individual seeking a meeting are simply incomparable to joining a public demonstration designed to articulate a specific

viewpoint of acute public concern). Here, like the Plaintiff in *Cosby,* Plaintiff's speech was made solely as a public employee and does not give rise to a First Amendment claim. This alone is sufficient to preclude any free speech claim under the First Amendment.

Plaintiff's speech was also unrelated to any public concern, but rather related only to himself. *See also Egger v. Phillips,* 710 F.2d 292, 318, 491-92 (7th Cir. 1983) ("[T]here is a difference between criticisms directed at the institution in general and disputes with which the complainant has an intimate personal involvement. . . . Speech that serves a private or personal interest, as opposed to a public one, does not satisfy the standards for First Amendment protections"); *Sullivan v. Ramirez,* 360 F.3d 692, 699 (7th Cir. 2004) ("[c]omplaints about personnel matters generally do not address a matter of public concern."); *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir. 1994) (where complaints are personal in nature, and employee speaks only "on his own behalf and in his own interest," speech is not on matter of public concern); *Cliff v. Bd. of Sch. Comm'rs of Indianapolis, Ind.,* 42 F.3d 403, 410-11 (7th Cir. 1994) (if speech pertains to matter of public interest but the expression addresses only the personal effect of that issue on the employee, speech is not on matter of public concern.) Because Plaintiff's allegedly compelled speech does not touch on a matter of public concern, he cannot maintain a First Amendment claim.

### C. Plaintiff does plausibly allege he suffered a deprivation that would likely deter First Amendment activity

As set forth above in Section I.C, Plaintiff has not suffered any adverse act related to his inability to update his racial designation. Accordingly, he cannot plausibly allege he suffered a deprivation likely to deter him from exercising his First Amendment rights; or that his speech was a motivating factor as to any employment action. *See Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 623 (7th Cir. 2012)(dismissing First Amendment claim for failing to allege facts that the plaintiff suffered deprivation likely to deter an ordinary person from exercising First Amendment Rights). Plaintiff's First Amendment claim should be dismissed.

WHEREFORE, for the reasons stated above, the City respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice, and any other relief that this Honorable Court deems just and proper.