EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2023-08347 |

Illinois Department of Human Rights _____ and EEOC
*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mohammad A. Yusuf | 7737420090 | 06/22/1980 |

Street Address: 2242 W Grand Avenue Chicago, Illinois 60612

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Chicago Police Department | 300 + | 3127466000 |

Street Address: 50 West Washington Street, Room 802, Chicago, Illinois 60602

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
|  | 300 + |  |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 04/11/2022   Latest:
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

July 18, 2023
Date — Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

July 18, 2023

OFFICIAL SEAL
ANEMARIE AIELLO
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires Nov. 3, 2026

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2023-0437 |

Illinois Department of Human Rights and EEOC
*State or local Agency, if any*

THE PARTICULARS ARE (if additional paper is needed, attach extra sheet(s)):

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

July 18, 2023
Date

*Charging Party Signature*

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

July 18, 2023

OFFICIAL SEAL
ANEMARIE AIELLO
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires Nov 3, 2026

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT A

Mohammad Yusuf is employed by the City of Chicago Police Department ("CPD"). Ofc. CPD has employed Yusuf since November 29, 2004. He currently serves as an officer on the DEA Federal Task Force.

**Charge 1: Discriminatory Merit Promotion Process Based on Race**

One way a police officer can be promoted to sergeant is through its "Merit System." The Merit System exists to help CPD officers who may not perform well on the qualifying sergeant's exam, but exhibit exceptional leadership within the CPD. The merit process was established to consider exemplary work performance and broader worker characteristics (beyond job knowledge) in the promotion process. Up to 30% of the total promotions to sergeant will be Merit Promotions. Race is not a determinative factor in the Merit Promotions process.

Ofc. Yusuf took the 2019 Sergeant's exam. Throughout Ofc. Yusuf's career, Ofc. Yusuf has demonstrated superior ability, responsibility, and dedication to police service. Ofc. Yusuf has also received numerous accolades demonstrating strong indicia of leadership, mentoring, decision-making, and interpersonal relations.

Worse yet, despite Ofc. Yusuf's qualifications and performance, he has been overlooked for a promotion in favor of individuals of a certain race on three rounds of sergeant promotions. Instead, several merit promotions occurred based on whether the officer was an African American, not on their skillset or leadership qualifications. Racial discrimination permeates every aspect of the Merit Promotion process including the nomination process, the use of CPD-exempt staff to conduct interviews, and perceptions that requirements for nomination and promotion via merit are not uniformly applied. The Department of Justice criticized the Merit selection process. CPD additionally ignored the recommendations for a more transparent and skill-focused Merit selection process.[1]

As such, Ofc. Yusuf has been subjected to reverse discrimination based on race in violation of Title VII of the Civil Rights Act of 1964, as amended. The CPD's Merit Based Promotion Process has been improperly used to discriminate against Ofc. Yusuf, favoring individuals of certain races over others. This has adversely affected Ofc. Yusuf's career progression within the department, not only by rank, pay, but also because a sergeant earns .75 hours a day of compensation time per 8-hour shift.

For example, of the 75 Merit Promotions to sergeant, only three (3) officers promoted identify as Caucasian. The majority of these 75 merit promotions lack legitimacy by promoting African American officers with checkered backgrounds including Brady List violations, adverse rulings finding them incredible rendering them unable to sign off on police reports (a requirement for the sergeant position), excessive force, or have personal relationships with the top CPD brass simply because the promoted officer identifies as African American.

---

[1] In August 2020, the City of Chicago (City), through Taft Law Firm, engaged DCI Consulting Group, Inc. (DCI) to conduct an independent expert review and evaluation of the current promotion processes for the ranks of sergeant and lieutenant in the Chicago Police Department (CPD).

**EXHIBIT A**

Ofc. Yusuf files this charge seeking to rectify CPD's discrimination against him, including: 1) promoting him to the rank of sergeant and awarding him seniority based on when he should have been promoted if CPD would have promoted him in April 2022; 2) award him lost pay and front pay until he is promoted to sergeant and corresponding comp time; and 3) change the Merit Promotion system to focus on an individual's skills and accolades rather than his or her race, to help to identify a diverse set of candidates who exhibit qualities expected of supervisors and leaders in CPD within their current assignments.

Two other officers who identify as Caucasian have filed eeoc charges. After they filed their eeoc charges, they were promoted to sergeant. (███████ EEOC Charge No. ███████ ███████ EEOC Charge No. ███████)

**Charge 2: CPD's Arbitrary Refusal to Allow Yusuf to Change his Racial Identity**

When Yusuf applied to become a CPD officer, there were only a few categories that an applicant could select as his or her designated race due to the restrictive racial designations offered by CPD's application form at that time. As such, Yusuf was compelled to identify as Caucasian, despite not identifying as white. Officer Yusuf initially perceived this as a minor administrative inconvenience, expecting that CPD would revise its procedures to reflect an evolving societal understanding of race. However, despite the apparent increase in racial designations available on CPD's current application forms, Officer Yusuf has been consistently denied the opportunity to alter his racial designation within the department. Despite numerous attempts to correct this issue, Officer Yusuf has consistently been told that it is "not possible to change race", an outdated stance that does not acknowledge the complexities and fluidities of racial identity. Of note, CPD allows officers to change other personal identity markers, such as their gender. This update demonstrates CPD's ability to adapt to societal changes and respect individual identity rights. Therefore, the refusal to allow changes to racial designation, while facilitating changes to other personal identity markers, appears to single out race as an immutable characteristic, effectively imposing an incorrect racial identity onto Officer Yusuf. Such selective accommodation for changes in personal identity attributes can be construed as differential treatment and racial discrimination, as it directly impacts Officer Yusuf's racial identity, a protected category under Title VII. Racial identity can significantly influence one's experiences as a police officer, shaping perceptions and treatment from colleagues and the public, and can consequently affect professional development and mental health. By enforcing an incorrect racial designation upon Officer Yusuf, CPD is contributing to a discriminatory work environment. In light of these circumstances, it is alleged that CPD's refusal to allow changes to an officer's racial designation, while accommodating changes to other personal attributes, represents a violation of Title VII of the Civil Rights Act of 1964.

**EXHIBIT A**