# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MOHAMMAD YUSUF, | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-01394 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, | ) | Jury Trial Demanded |
| Defendant. | ) | |

## 1ST AMENDED COMPLAINT FOR MONETARY AND EQUITABLE RELIEF

NOW COMES Plaintiff, by his attorneys and avers as follows:

### JURISDICTION & VENUE

1. The 14th Amendment's Equal Protection Clause; 42 U.S.C. §§ 2000e-2, 1981, 1983 (and for fees pursuant to 42 U.S.C. § 1988); and 28 U.S. Code § 2202.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 1343.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because Plaintiff and Defendants either reside in this district or have a principal place of business in this district and all events giving rise to Plaintiff's claims occurred within this district.

4. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

### PARTIES

1. Yusuf Muhammed Yusuf ("Yusuf") has been employed as a Chicago Police officer since 2004. He currently resides in Chicago, Illinois. He currently identifies as Egyptian and African American. Yusuf wishes to correct the racial designation listed on his police personnel file, which currently indicates that he is Caucasian, to accurately reflect his race, as North African.

1

2. Defendant, City of Chicago is a municipality incorporated in the State of Illinois, and the Chicago Police Department is a division within this municipality (hereinafter "CPD" or Department). Defendant has indemnification obligations for wrongful acts committed by its officials, employees, and agents. See 745 ILCS §§ 10/1-202 and 9-102. It is responsible for the challenged actions of unknown defendants and the Chicago Police Department.

**FACTS**

3. On belief, when Yusuf became a CPD officer; there were only a few categories that an officer could select as his or her designated race due to the restrictive racial designations (e.g., Caucasian, Hispanic, or African American) offered by CPD's personnel paperwork.

4. Therefore, Yusuf selected Caucasian, despite not identifying as white.

5. In 2024, pursuant to changes, the Chicago Police Department ("CPD") now allows officers to select from over nine different racial designations.

6. Plaintiff wants to change his race on CPD paperwork, to African.

7. Plaintiff sought to change his racial designation on CPD paperwork, to African, but has been consistently denied.

8. In support of his request and basis to make the change, Yusuf submitted to a DNA test (known as "23 and Me") test to confirm his race as African.[1]

9. Yusuf provided the DNA evidence to the CPD, confirming his racial heritage as African.

---

[1] Based on reasonable information and belief, CPD does not require that transgender individuals provide proof of their transition before making the change. That practice is consistent with mainstream medical organizations, which oppose requiring surgery in order for transgender individuals to change their identity documents.

10. In denying the request to change his race, CPD told Plaintiff that racial identity is immutable.

11. Plaintiff contends that such position is a "Racial Identity Policy Ban" in violation Title VII and the Equal Protection Clause, among others.

12. Plaintiff contends that since Racial identity influence one's experiences as a police officer, shaping perceptions and treatment from colleagues and the public, and can consequently affect professional development and mental health; therefore, the denial constitutes a material employment adverse action.

13. CPD officers are afforded the opportunity to have their gender identity corrected to match their lived experience (either a person who transitions from a man to a woman, or vice versa and or a person who elects to no longer be identified as either a man or woman).

14. No compelling government interest justifies CPD's refusal to correct the racial identity markers for individuals misclassified, particularly in light of the socially constructed nature of racial categories and their profound impact on personal and professional spheres.

15. Within CPD, a person's racial designation is more than a simple checkbox. It reflects the ability to qualify for merit-based promotions.

16. The Racial Identity Policy Ban is not supported by any compelling, substantial, or even legitimate government interest.

17. The Racial Identity Policy Ban lacks any narrowly-tailored, substantial, or even rational relationship to a valid government interest, and it is not the least restrictive means of achieving a valid government interest.

18. CPD's Racial Identity Policy Ban violates federal constitutional guarantees, including the rights to equal protection, Title VII, §§ 1981, 1983, and freedom from compelled speech.

## CPD's Controversial Merit-based Promotions

19. In 2021, CPD reinstated its Merit System for sergeant and lieutenant promotions.

20. Officers who took promotion tests in 2019 were eligible for promotion in 2021.

21. The Merit System allows nominations of junior officers from high-ranking officials for promotions.

22. The Merit System has been criticized for lacking transparency and fostering cronyism over merit or diversity.

23. The Department of Justice criticized the CPD's Merit selection process for lack of transparency and fairness, recommending reforms to fairly increase diversity within the Department.

24. CPD has ignored these recommendations and, instead, continues a pattern of racial discrimination in promotions.[2]

## Merit Based Promotions Adverse Impact on Yusef

25. Yusuf took the 2019 Sergeant's exam and allegedly scored in the first promotional tier.

26. Yusuf was qualified to be promoted to sergeant.

27. On belief, around 30% of the recent promotions to sergeant within the department were based on merit.

28. On belief, based on the 2019 sergeant's exam, there have been over 75 Merit Promotions to sergeant.

29. On further belief, less than five ("5") of the officers who received Merit Promotions to sergeant, identify as "Caucasian."

---

[2] https://www.chicago.gov/content/dam/city/sites/police-reform/docs/CPD%20Sgt%20and%20Lt%20Promotion%20Recommendations_12.30.2020_final%20(1).pdf

30. Despite Yusuf's exemplary qualifications and the purported race-neutral policy of the Merit System, Yusuf has been repeatedly bypassed for promotion in favor of less qualified candidates, based on their race, some of whom had disciplinary issues and were not suitable for the responsibilities of a sergeant.

31. The CPD's Merit-Based Promotion Process has been improperly used to discriminate against Yusuf because CPD paperwork identifies him as white, favoring individuals of certain races over others. This has adversely affected Yusuf's career progression within the department, not only by rank and pay but also because a sergeant earns .75 hours a day of compensation time per 8-hour shift.

32. Plaintiff did receive a Right to Sue Letter and did timely file the instant lawsuit within 90 days of receipt of the letter.

## COUNT I: VIOLATION OF TITLE VII AND
## THE EQUAL PROTECTION CLAUSE

33. Yusuf incorporates the paragraphs above as though fully set forth herein. This count begins with the first paragraph of the Facts section.

34. But for Plaintiff identifying as African, Defendant would not have denied Plaintiff a race change entry in CPD administrative records.

35. Alternatively, but for Plaintiff identifying as white, Defendant would not have denied Plaintiff a race change entry in CPD administrative records.

36. If Plaintiff sought a record entry change from male to female, it would have been permitted.

37. However, because he sought and continues to seek a change from white to African, he has been denied an entry change. This in violation of Title VII and the Equal Protection Clause of the 14th Amendment.

38. Defendant maintains a Racial Identity Policy Ban (a prohibition of changing one's race).

39. In 2022, 2023, and 2024, the Plaintiff complained to CPD management of the Racial Identity Ban Policy Ban.

40. In 2022, 2023, and 2024, Plaintiff complained to CPD management that it was improper for it to have disallowed his request to change his race.

41. Defendant has not taken reasonable and or prompt steps to address the Plaintiff's complaints of racial discrimination.

42. Defendant has not taken reasonable and or prompt steps to address the Plaintiff's complaints of the Constitution's Equal Protection Clause.

43. The Ban facially and intentionally discriminates against certain individuals based on personally identifiable characteristics, namely race.

44. The Fourteenth Amendment to the United States Constitution provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

45. Race is and was a motivating factor in Defendant's refusal to permit Plaintiff to change his race in CPD administrative paperwork.

46. Similarly situated employees (especially as to gender) of the CPD have not been denied a right to change protected class identity markers.

47. CPD permits changes within its administrative records of gender markers (e.g., from to male to female; female to male; they\them; and or transgender).

48. Defendant has arbitrarily refused to allow Yusuf to change-update his racial designation, effectively imposing an incorrect and immutable racial identity on officers such as Yusuf.

49. CPD's refusal to allow changes to an officer's racial designation while accommodating changes as to gender represents a violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause.

50. Defendant's refusal to allow Plaintiff to change his race is presumptively invalid since the City of Chicago cannot demonstrate that refusal is necessary to achieve a "compelling state interest".

51. Defendant's Racial Identity Police Ban is presumptively invalid since the City of Chicago cannot demonstrate that the Ban is necessary to achieve a "compelling state interest."

52. Defendant's conduct was and is the proximate cause and substantial factor in causing Plaintiff's harm.

53. The plaintiff suffered harm, including pain and suffering, loss of income, humiliation, and mental stress (Garden Variety).

WHEREFORE, for the foregoing reasons, Plaintiff Mohammad Yusuf requests that this Court enter judgment in his favor and against Defendant City of Chicago in an amount to be proved at trial and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT II - §1981 Racial Discrimination

54. Yusuf incorporates the paragraphs above as though fully set forth herein.

55. The discriminatory practices of the CPD, as detailed herein, not only constitute violations of Title VII but also infringe upon the equal protection principles embodied in 42 U.S.C. § 1981. These practices, by discriminating against Yusuf and others based on racial identity, deny them the full and equal benefit of all laws, as guaranteed by § 1981.

56. Defendant's conduct, including the discriminatory application of its Merit Promotion Process and refusal to acknowledge Yusuf's racial identity, has violated Yusuf's rights under 42 U.S.C. § 1981 to make and enforce contracts, including employment contracts,

57. Defendant's conduct was and is the proximate cause and substantial factor in causing Plaintiff's harm.

58. Plaintiff suffered harm to include pain and suffering; loss of income; humiliation; and mental stress (garden variety).

WHEREFORE, for the foregoing reasons, Plaintiff Mohammad Yusuf requests that this Court enter judgment in his favor and against Defendant City of Chicago in an amount to be proved at trial and for all such other relief to which he is entitled, and the Court deems just and proper.

## COUNT III, MONELL COUNT (42 USC 1983)

59. Yusuf incorporates the paragraphs above as though fully set forth herein.

60. The Merit-based promotion system discriminates against officers identified as white in CPD administrative paperwork.

61. This is because of a CPD policy (Racial Identity Policy Ban).

62. The policy represents a deprivation of a federal right to present and define race based on DNA.

63. The policy represents a deprivation of a federal right (substantive due process) to identify with the race consistent with his\her DNA; and the dignity that should afford to a person's racial identity.

64. The policy in issue is a governmental action that can be traced to the deprivation (policy and custom).

65. The policy and custom demonstrates the City of Chicago's fault (deliberate indifference).

66. The City of Chicago, with its municipal action, was and continues to be the moving force behind the federal violation.

67. WHEREFORE, for the foregoing reasons, Plaintiff Mohammad Yusuf requests that this Court enter judgment in his favor and against Defendant City of Chicago in an amount to be proved at trial and for all such other relief to which he is entitled, and the Court deems just and proper.

## COUNT IV, MONELL COUNT (42 USC 1983)

68. Yusuf incorporates the paragraphs above as though fully set forth herein.

69. Based on reasonable information and belief, around 30% of the recent promotions to sergeant within the department were based on merit.

70. Based on reasonable information and belief, from the 2019 sergeant's exam, there have been over 75 Merit Promotions to sergeant.

71. On further belief, less than five ("5") of the officers who received Merit Promotions to sergeant, identify as "Caucasian."

72. The Merit-based promotion system discriminates against officers identified as white or Caucasian.

73. The policy represents a deprivation of a federal right, namely equal treatment under the law regardless of race or color of skin.

74. The CPD policy (essentially an unlawful DEI effort[3]) in issue, represents that CPD decisions to promote, are based on race although the CPD defines it and has named the initiative merit-based promotions.

75. The policy in issue is a governmental action that can be traced to the deprivation (policy and custom).

76. The policy and custom demonstrates the City of Chicago's fault (deliberate indifference).

77. The City of Chicago, with its municipal action, was and continues to be the moving force behind the federal violation.

78. WHEREFORE, for the foregoing reasons, Plaintiff Mohammad Yusuf requests that this Court enter judgment in his favor and against Defendant City of Chicago in an amount to be proved at trial and for all such other relief to which he is entitled, and the Court deems just and proper.

### COUNT V: 28 U.S. Code § 2202 (and FRCP 57)
### DECLARATORY RELIEF SOUGHT

79. Yusuf incorporates the paragraphs above as though fully set forth herein.

80. There is a case and controversy.

81. Such controversy is of a justiciable nature.

82. Plaintiff has a practical interest in a declaration from the court.

83. Plaintiff can show he suffered an injury.

---

[3] Diversity, Equity, and Inclusion.

84. Plaintiff suffered harm and continues to suffer harm to include harm which includes financial losses, career reputational damage; legal fees; pain and suffering; humiliation; and garden variety emotional stress.

85. Defendant's conduct was and is the proximate cause and substantial factor in causing Plaintiff's harm.

86. Defendant's conduct was willful and wanton.

## PRAYER FOR DECLARATORY RELIEF

WHEREFORE, Yusuf respectfully requests that tis Court:

A. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-02, declaring the Racial Identity Policy Ban unconstitutional on its face and as applied for the reasons set forth above;

B. Permanently enjoin Defendants, their agents, employees, representatives, successors, and any other person acting directly or indirectly in concert with them from enforcing the Racial Identity Policy Ban, including from refusing to allow individuals like Yusuf that accurately reflect their race, consistent with their racial identity;

C. Award Yusuf costs, expenses, and reasonable attorneys' fees pursuant to 42 18 U.S.C. § 1988 and any other applicable laws; and

D. Grant any injunctive or other relief that this Court deems just, equitable, and proper.

**The Plaintiff hereby makes a demand for a Jury.**

Respectfully Submitted,

Mohammad Yusuf

GB Law, One of Plaintiff's Attorneys
s\Gianna Scatchell Basile, ESQ.
1821 W Hubbard Street, #209
Chicago, Illinois 60622
(312) 248-3303  gb@lawfirm.gs

s\Christopher Cooper, ESQ., One of Plaintiff's Attorneys
Law Office of Christopher Cooper, INC.
426 N. Broad Street, Griffith, IN 46319
Tel: 312 473 2968; 219 228 4396 FAX: 866 334 7458;
E-mail: cooperlaw3234@gmail.com

CERTIFICATE OF SERVICE:
The undersigned certifies he caused the foregoing to be filed on October 31, 2024 and that Defendant is an e-filer.

S\CHRISTOPHER COOPER