IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOHAMMAD YUSUF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-01394 |
| v. | ) | |
| | ) | Hon. Joan B. Gottschall |
| | ) | |
| CITY OF CHICAGO, | ) | Magistrate Judge Maria Valdez |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Dated: November 14, 2024                     Respectfully submitted,

                                             Office of the Corporation Counsel

                                             By:  *s/ Benjamin H. Cook*
                                             Benjamin H. Cook
City of Chicago, Department of Law           Assistant Corporation Counsel
Employment Litigation Division
2 North LaSalle Street, Suite 640            Derek R. Kuhn
Chicago, Illinois 60602                      Chief Assistant Corporation Counsel
(312) 742-3931/744-0898
Benjamin.Cook@cityofchicago.org
Derek.Kuhn@cityofchicago.org

Defendant City of Chicago (hereinafter "the City"), by and through its attorney, the Office of the Corporation Counsel, respectfully submits its Memorandum in Support of its Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), and states the following:

## **INTRODUCTION**

Plaintiff Mohammad Yusuf ("Plaintiff") alleges that he voluntarily self-selected the racial designation of "Caucasian" on a personnel form that he submitted to the Chicago Police Department ("CPD") in 2004, despite not identifying as white. Plaintiff alleges that on an unspecified date thereafter, he requested that his racial designation be changed to African American (a category that Plaintiff admits was a choice in 2004) or African. Without identifying any specific policy, Plaintiff cursorily asserts that his inability to update his racial demographic information constitutes a blanket "prohibition of changing one's race" on personnel forms. Plaintiff further cursorily alleges, without any factual support, that his self-selected racial designation on a form that he filled out and submitted in 2004 caused his promotion to Sergeant to be delayed in 2021.

Plaintiff sets forth five Counts in his Complaint: violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution pursuant to 42 U.S.C. §1983 ("Section 1983") due to his inability to update his racial designation (Count I);[1] violation of 42 U.S.C. §1981 ("Section 1981") due to his non-promotion (Count II); *Monell* violation pursuant to Section 1983 due to his inability to update his racial identity designation (Count III); *Monell* violation pursuant to Section 1983 due to his non-promotion (Count IV); and a request for Declaratory Relief (Count V).

---

[1] Plaintiff appears to combine separate claims under Title VII and the Equal Protection clause into a single Count I. For clarity, the City will address the claims individually.

1

Plaintiff's claims fail because he does not allege that race was the motivating factor in his inability to update his racial designation in his personnel paperwork, he does not allege that similarly situated employees were allowed to update their racial designation, he is admittedly not a member of the class that he alleges has been injured by CPD's promotion practices (white), he fails to set forth facts to support any plausible inference that any decisionmaker accessed, considered, or relied upon his personnel paperwork in making promotional decisions, he does not plausibly allege that a municipal policy or practice was the moving force behind a constitutional deprivation he suffered, and he does not allege any other employee attempted to change their racial designation and were denied.

## FACTUAL BACKGROUND

I. **Plaintiff's CPD Personnel Form**

Plaintiff has been employed by CPD as a Police Officer since 2004. *See* Plaintiff's First Amended Complaint ("FAC"), Dkt. No. 37, at ¶1.[2] When he was first hired as a Police Officer, Plaintiff was presented with personnel paperwork to complete. *Id.* at ¶3. The personnel paperwork included a form with a section for indicating an employee's racial identity. *Id.* The form included several racial designation options, including "Caucasian, Hispanic, or African American." *Id.* Plaintiff alleges that the current version of the CPD personnel form includes more distinct Race/Ethnicity designation options than the 2004 version of the form did.[3] *Id.* at ¶5.

Plaintiff "identifies as Egyptian and African American." *Id.* at ¶1. When completing his personnel paperwork in 2004, however, Plaintiff voluntarily self-identified as "Caucasian," rather than

---

[2] In his FAC, Plaintiff restarts his paragraph numbering in fifth paragraph, under the heading "Parties," meaning he has two paragraphs each labeled 1, 2, 3, and 4. *See* FAC pp. 1-2. For clarity, the City will use the paragraph numbering beginning with number 1 under "Parties," unless otherwise noted.

[3] Plaintiff alleges that the current version of the personnel form "allows officers to select from over nine different racial designations." FAC at ¶5. As evidenced by the Personnel Contact and Data Form that Plaintiff filled out on April 11, 2023, however, the Race/Ethnicity section of the form included only six different Race/Ethnicity designations, one designation for "Two or more races," and one designation for "I choose not to disclose." *See* 2023 Personnel Form, Ex. 1.

2

"African American" or any other racial designation. *Id.* at ¶¶3-4. Plaintiff selected "Caucasian" even though he did "not identify[] as white," and his self-identified designation of "African American" was available for selection. *Id.* Plaintiff alleges that at some point after 2004, he "sought to change his racial designation" on his personnel form. *Id.* at ¶7; *see also* Plaintiff's 2023 Personnel Contact and Data Form ("2023 Personnel Form"), attached hereto as **Exhibit 1**.[4] Plaintiff allegedly sought to change his racial designation from "Caucasian" to "African," a designation that is not available on the form in question.[5] *See* FAC at ¶¶6-8.

Plaintiff alleges that he has been unable to change his racial designation because "CPD told Plaintiff that racial identity is immutable." *Id.* at ¶10. Somewhat confusingly, Plaintiff contends that such conception of "immutable" racial identity is outdated "in light of the socially constructed nature of racial categories," but also contends that he provided CPD with (immutable) "DNA evidence" which "confirm[ed] his race as African." *Id.* at ¶¶8-9, 14. Plaintiff alleges CPD maintains a blanket prohibition against individuals changing their racial designation, and that his request would have been refused regardless of his racial identity. *See id.* at ¶¶ 34-35, 38. Though Plaintiff characterizes this alleged blanket prohibition as a "Racial Identity Policy Ban," he does not allege any specific policy by the CPD or the City implementing such a ban. *See id.* at ¶11.

---

[4] In evaluating the sufficiency of a complaint, a court may consider documents that are "central to the complaint and are referred to in it," without converting a 12(b)(6) motion into a motion for summary judgment. *CNTRST Debt Recovery v. Ybarra*, No. 21 C 2702, 2024 WL 1435099, at *1 n.2 (N.D. Ill. Apr. 2, 2024) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). Here, Plaintiff's Complaint repeatedly refers to his request to revise his personnel file with an updated racial identity designation, *see, e.g.*, FAC at ¶¶6-8, 37. He has therefore incorporated his signed 2023 Personnel Form change request into his complaint and the Court may take judicial notice of its contents.

[5] As evidenced by the 2023 Personnel Form, there is no available designation of "African." *See* 2023 Personnel Form, Ex. 1. The closest designation to "African," and the designation Plaintiff actually selected when requesting a change to his form, is "Black or African American." *Id.* "African American" has been an available designation since at least the time of Plaintiff's hiring in 2004. FAC at ¶3.

3

## II. Plaintiff's Application for Promotion and the Sergeant Promotion Process

Plaintiff alleges that the CPD examination for promotion to Sergeant was offered in 2019, and that officers who took the 2019 examination "were eligible for promotion in 2021" ("2021 Class" promotions). FAC at ¶20. Plaintiff further alleges that CPD also reinstated a "Merit System" for Sergeant promotions in 2021, which "allows nominations of junior officers [by] high-ranking officials for promotions." *Id.* at ¶¶19, 21. Plaintiff asserts that the merit process "continues a pattern of racial discrimination in promotions" and favors "individuals of certain races over others[,]" and vaguely alleges the merit process "has been criticized" for "fostering cronyism over merit or diversity." *Id.* at ¶¶22, 24, 32.[6] Plaintiff does not, however, allege how the merit process favors "individuals of certain *races* over others," nor which races the merit process allegedly favors. *See id.* at ¶¶22, 31 (emphasis added). Plaintiff alleges on belief that approximately 30% of the 2021 Class promotions to Sergeant have been via this merit process. *Id.* at ¶27. Plaintiff does not allege the process by which the other 70% of promotions ("non-merit promotions") in the 2021 Class occurred. See *id.* at ¶¶19-29.

Plaintiff further alleges that he "took the Sergeant's exam in 2019 and allegedly scored in the first promotional tier" and was "qualified to be promoted to sergeant." *Id.* at ¶¶25-26. Plaintiff does not allege what "promotional tiers" are or how they fit into the overall promotion process, nor does Plaintiff offer any allegation as to how his "allegedly scor[ing] in the first promotional tier" impacted his eligibility for non-merit promotion, which was the process by which 70% of promotions were made. *See id.* It is unclear from Plaintiff's pleadings whether the 2021 Class promotion process is still ongoing, and whether Plaintiff is currently eligible for non-merit promotion. *See id.* at ¶¶19-31.

Separate from the non-merit promotion process, Plaintiff alleges that the merit process has "been improperly used to discriminate against [him] because CPD paperwork identifies him as

---

[6] Neither Plaintiff's conclusory allegations regarding the merit process, nor innuendo attributed to unidentified third parties, are entitled to be assumed true. *Iqbal*, 556 U.S. at 681, 129 S. Ct. at 1951.

white[.]" *Id.* at ¶31. Plaintiff also asserts that some "less qualified candidates" have been promoted via the merit process "on the basis of their race," despite not being "suitable for the responsibilities of a sergeant." *Id.* at ¶30. Plaintiff further asserts that these unidentified "less qualified candidates" bypassed him for promotion. *Id.* Plaintiff does not allege, however, whether he was eligible, or considered, for promotion under the merit process. *See id.* at ¶¶19-31. Nor does Plaintiff allege that merit process nominators accessed, considered, or relied upon his personnel paperwork in evaluating him for the merit process. *See id.* at ¶ 31. Plaintiff similarly does not allege that nominators perceived or considered him to be Caucasian. *See id.*

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court accepts well-pleaded allegations of fact as true and draws all reasonable inferences in the favor of the plaintiff but may disregard legal conclusions. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). If the allegations fail to raise the right to relief "above the speculative level," dismissal is appropriate. *Id.* The Federal Rules of Civil Procedure provide that a plaintiff cannot "unlock the doors of discovery" when "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

### I. **Plaintiff Insufficiently Alleges Title VII Disparate Treatment Based on His Alleged Inability to Change His Racial Designation on Personnel Paperwork (Count I).**

Title VII makes it unlawful for an employer to discriminate against employees on the basis of a number of protected characteristics, including race. Title VII, 42 U.S.C. § 2000e-2(a)(1); § 2000e-

5

3(a); *Carol B. v. Waubonsee Cmty. Coll.*, 23 CV 02033, 2024 WL 3069974, at *5 (N.D. Ill. June 20, 2024). "[T]he singular question that matters in a discrimination case" is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). The *McDonnell Douglas* test, however, "remains an efficient way to organize, present, and assess evidence in discrimination cases." *Id.*; *see also Taylor v. Bd. of Educ. of Chi.*, 2020 U.S. Dist. LEXIS 155741, *33–*34 (N.D. Ill. Aug. 27, 2020). To establish a prima facie case under *McDonnell Douglas*, a plaintiff must plausibly allege that they "(1) are members of a protected class; (2) performed reasonably on the job in accord with their employer['s] legitimate expectations; (3) were subjected to an adverse employment action despite their reasonable performance; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer." *Johnson*, 892 F.3d at 895; *see also Warren v. Millennium Hotels & Resorts*, 692 F. Supp. 3d 828, 831 (N.D. Ill. 2023) (a plaintiff must "aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [race].)" Here, Plaintiff fails to plausibly allege that similarly situated employees were allowed to update their racial designations or that he suffered an adverse action in his inability to update his own racial designation.

**A. Plaintiff does not allege that race was the motivating factor in his inability to update his racial designation in his personnel paperwork**

To maintain a Title VII discrimination claim, the protected class consideration – in this case, race – must have been a "motivating factor" for the plaintiff's adverse action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2345 (2009). Here, Plaintiff fails to allege any racial motivation in his inability to change his racial designation. *See generally*, FAC. Plaintiff attributes this inability to change his racial designation to what he characterizes as a "Racial Identity Policy Ban" (despite failing to identify any written policy). *Id.* at ¶¶11, 38, 43. Plaintiff admits, however, that his race is *immaterial* with respect to the "Policy," and the result of his change request would have been the same regardless

6

of his racial identification. *See id.* at ¶¶34-35. Plaintiff also alleges that the "Policy" is "arbitrarily" maintained by the CPD, rather than being racially motivated. *Id.* at ¶48. Therefore, Plaintiff's own allegations indicate the "Policy" is not racially motivated and impacts employees of all races equally. Because Plaintiff has not alleged any racial motivation for the alleged employment action, he cannot maintain his claim.

### B. Plaintiff does not allege that similarly situated employees were allowed to update their racial designation in their personnel paperwork

When considering whether an individual is 'similarly situated' in a Title VII context, a plaintiff "must at least show that [his] 'comparator' (1) 'dealt with the same supervisor,' (2) 'w[as] subject to the same standards,' and (3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [his] conduct or the employer's treatment of [him].'" *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014). Here, Plaintiff alleges that CPD categorically enforced a blanket "prohibition of changing one's race." FAC at ¶38. Therefore, according to Plaintiff's own allegations, all CPD employees were subject to the same policy, regardless of race. As a result, Plaintiff has failed to adequately allege the existence of any comparators, much less any similarly situated employees who were treated more favorably than he was, and he cannot maintain his claim.

In an attempt to sidestep this deficiency, Plaintiff repeatedly alleges that officers who sought to change their *gender*, as opposed to *racial*, designations were allowed to do so. *Id.* at ¶¶13, 36, 46-47, 49. This comparison is completely inapposite, however. CPD's gender classification rules, which Plaintiff alleges are uniform for all employees, have nothing to do with race generally or with Plaintiff's race specifically. *See id.* Here, Plaintiff is claiming that he was discriminated against on the basis of his race. However, the allegation that all CPD members are subject to the same race and gender classification rules, regardless of their race or gender, necessarily means that no CPD members were treated more favorably on the basis of their race. It is axiomatic that the CPD allowing a different

7

employee to change their gender *but not* their racial designation, is not different or more favorable treatment than allowing Plaintiff to change his gender but not his racial designation.

**C. Plaintiff does not allege an adverse action in his inability to update his racial designation in his personnel paperwork**

For purposes of Title VII, an "adverse employment action" is "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quoting *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000) (alteration in original)). Actions that alters the employee's working conditions in a "humiliating, unsafe, or otherwise negative way" can qualify. *Hobbs v. Dart,* No. 20-cv-6513, 2021 WL 1906465, at *13 (N.D. Ill. May 12, 2021); *Haley v. Urban Outfitters*, No. 22-1932, 2023 WL 1775670, at *8 (7th Cir. 2023). Courts have determined that "not everything that makes an employee unhappy is an actionable adverse action … [o]therwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996).

Here, Plaintiff alleges that the CPD has refused to allow him to "change-update his racial designation." FAC at ¶48. In and of itself, however, Plaintiff's racial designation has no impact on any of the terms or conditions of his employment, and his inability to update his designation did not create any "quantitative or qualitative change in the terms or conditions of employment." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003) (affirming summary judgment on a retaliation claim because the denial of a benefit "and the enforcement of a pre-existing rule" is not a materially adverse action). More concrete actions, such as the denial of a preferred schedule or failure to provide a locker, have routinely been found not to constitute a materially adverse action. *See, e.g., Smith v. Chief Judge of Cir. Ct. of Cook Cnty.*, No. 17-CV-08341, 2021 WL 767624, at *9 (N.D. Ill. Feb. 26, 2021), aff'd, No. 21-1544, 2022 WL 1238449 (7th Cir. 2022) ("The denial of [plaintiff's] preferred schedule did not create an 'injury or harm.'"); *Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018) (failure to provide a

locker, delayed paycheck, and a short paycheck did not constitute an adverse action); *Koty v. DuPage Cnty., Illinois*, 900 F.3d 515, 521 (7th Cir. 2018) (generally changing an employee's shift is "not considered a materially adverse employment action[.]"). Because Plaintiff has not plausibly alleged the existence of an adverse action in his inability to update his racial designation, his claim should be dismissed.

## II. Plaintiff Insufficiently Pleads an Equal Protection Claim (Count I).

Plaintiff also alleges, as part of a 'combined' Count I, that the City violated his rights under the Equal Protection Clause of the Fourteenth Amendment when he was unable to update his demographic information. FAC at ¶¶37, 49. In order to maintain his claim, Plaintiff must plausibly allege that the policy in question "had a discriminatory effect," which means that he must plausibly allege that he is a member of a protected class, that he was treated differently from similarly situated members of the unprotected class, and that he was treated differently because of his protected status. *Mordi v. Zeigler*, No. 3:11-CV-00193-NJR, 2020 WL 2425796, at *12 (S.D. Ill. May 12, 2020) (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001)).

As noted in Section I.B. above, Plaintiff has not alleged that he was treated differently than others similarly situated. Plaintiff's own allegations make clear that any CPD policy on the matter was enforced as a blanket policy, and that all officers would have been subject to the same categorical refusal to change their race and its alleged impact. *See* FAC at ¶38; *see also Palmer v. Thompson*, 403 U.S. 217, 225 (1971) (holding that there can be no equal protection violation where no state action affects races differently from each other). Plaintiff alleges no facts with respect to the specific impact on Egyptian/North African/African/African American officers other than himself, nor has he alleged any comparators from an unprotected racial class who were treated differently. *See id.* at ¶¶38, 49.

As also noted above, Plaintiff cannot use CPD's alleged approach of allowing officers to change their gender designation to allege deferential treatment with respect to race. *Id.* at ¶¶13, 36, 46-

9

47, 49. To constitute similarly situated members of an unprotected class, the persons alleged to have been treated more favorably "must be identical or directly comparable to the plaintiff in all material respects." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citing *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir.2009)). "While this is not a 'precise formula,' it is nonetheless 'clear that similarly situated individuals must be very similar indeed.'" *Id.* (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir.2004)). The fact that a CPD officer, of any race, can allegedly change their gender designation but not their racial designation, does not make them similarly situated to Plaintiff in his alleged inability to change his racial designation. As a result, Plaintiff cannot maintain his equal protection claim.

### III. Plaintiff Insufficiently Pleads a Section 1981 Discrimination Claim (Count II).

In Count II, Plaintiff attempts to bring a racial discrimination claim under 42 U.S.C. § 1981 ("Section 1981") based on the CPD's promotion practices for the Sergeant position. As a preliminary matter, Section 1981 provides no private right of action against state actors. *See Campbell v. Forest Preserve Dist. Of Cook Cnty.*, 752 F.3d 665, 671 (7th Cir. 2014). To the extent Plaintiff attempts to bring his Section 1981 claim via a *Monell* theory, it fails for the reasons set forth *infra* in section IV. If Plaintiff adequately pleaded a *Monell* theory, which he has not, claims brought under Section 1981 are analyzed using the same standard as Title VII employment discrimination claims. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019); *Williams v. Seniff*, 342 F.3d 774, 788 (7th Cir. 2003). To maintain a Section 1981 racial discrimination claim, however, a plaintiff bears the higher burden of showing that race was a *but-for* cause of his injury. *Comcast v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020). Plaintiff cannot sustain his claim because he has failed to plausibly allege causation, that he is a member of a protected class, or that he was subjected to an adverse employment action.

As noted in Section I.A. above, Plaintiff completely fails to allege any racial causation for his injuries, much less the existence of but-for causation. Rather, Plaintiff alleges that his injuries resulted

10

from policies that applied to all CPD employees, regardless of race. FAC at ¶38. But-for causation is an essential element of a Section 1981 claim, and because he has failed to plausibly allege that race was the but-for cause of his alleged injuries, Plaintiff's claim should be dismissed. *Comcast*, 589 U.S. at 341.

Plaintiff also fails to allege that he is a member of the protected class that has suffered the alleged adverse employment action. Plaintiff's allegations make clear that he is alleging injury to candidates for the Sergeant position who "identify as 'Caucasian.'" FAC at ¶¶21, 71; *see also* FAC at ¶¶30 (alleging that despite the "purported race-neutral" merit process, less qualified candidates are promoted "based on their race"), 31 (alleging that "individuals of certain races" were favored over Plaintiff "because CPD paperwork identifies him as white"), 72 (alleging that the "Merit-based promotion system discriminates against officers identified as white or Caucasian"). It is equally clear from Plaintiff's complaint, however, that he is not, and does not consider himself to be, Caucasian. *See id.* at ¶¶1 (alleging that Plaintiff's race is "North African" and he "identifies as Egyptian and African American"), 48 (alleging that Plaintiff's racial designation of Caucasian is "incorrect"). As a result, Plaintiff has pled himself out of court, because he is admittedly *not* a member of the class that he alleges has been injured.

Plaintiff also fails to plausibly allege that he was even considered to be Caucasian in the Sergeant promotion process. He does allege that he voluntarily self-selected the "Caucasian" designation on his initial personnel paperwork when he joined the CPD in 2004 (rather than the also available designation of "African American"). *Id.* at ¶¶3-4. He does not allege, however, that merit process nominators or anyone else at the CPD reviewed and considered his personnel paperwork, or even had access to it, as part of the promotion process. *See generally id.* at ¶¶19-31. Plaintiff likewise fails to allege a basis to plausibly suggest that merit process nominators or anyone else at the CPD actually *considered* him to be Caucasian, independent of his paperwork. *See id.* Without any allegations that plausibly suggest that nominators considered Plaintiff to be Caucasian and relied on that

11

impression in their merit process decisions, Plaintiff's claim that he was "passed over" based on the racial designation in is paperwork is merely conclusory and cannot maintain his claim.

**IV.    Plaintiff Fails to Plausibly Allege that a Municipal Policy or Practice was the Moving Force Behind a Constitutional Deprivation He Suffered (Counts III and IV).**

Plaintiff also brings two "Monell Counts" under 42 U.S.C. § 1983 in Counts III and IV. Pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978), a municipality cannot be liable for constitutional violations under Section 1983 unless official government policy inflicts the injury. *Id.*, at 694. To establish *Monell* liability under Section 1983, a Plaintiff must establish: "(1) he was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (internal quotations and citations omitted). At the pleading stage, to state a *Monell* claim against the City, a plaintiff is required to "plead factual content that allows the court to draw the reasonable inference" that the City maintained a policy, custom, or practice of intentional discrimination against a class of persons to which the plaintiff belonged. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1949; *Monell*, 436 U.S. at 694).

As a threshold matter, Plaintiff has failed to plausibly allege that he was deprived of a constitutional right. The only "constitutional rights" Plaintiff identifies in Count III are "a federal right to present and define race based on DNA" and "a federal right (substantive due process) to identify with the races consistent with his\her DNA[.]" FAC at ¶¶ 62-63. These vague and conclusory assertions are not constitutional rights. In Count IV, Plaintiff pleads that CPD officers who "identify as Caucasian" are allegedly discriminated against by the merit promotion process. *Id.* at ¶¶ 71-72. However, as noted above, Plaintiff alleges that he does *not* identify as Caucasian, and he does not allege

that anyone involved in the merit process considered him to be Caucasian. *See id.* at ¶¶ 1, 25-31. Therefore, Plaintiff has failed to allege that he has suffered a deprivation of a constitutional right.

Plaintiff also fails to sufficiently allege the existence of a policy, custom, or practice of intentional discrimination. Plaintiff baldly asserts that the City maintains a "Racial Identity Policy Ban." FAC at ¶¶11, 38. However, despite Plaintiff's use of capitalization, Plaintiff has not and cannot identify any express written policy maintained by the City related to employees' ability to update their demographic information. *See generally, id.* As a result, Plaintiff's *Monell* claim fails to the extent he intends to proceed under an express policy theory. *See Barr v. Town of St. John, et al.*, 2:23-CV-335 JD, 2024 WL 3534611, at *9 (N.D. Ind. July 24, 2024) (holding the Plaintiff "has not stated a plausible *Monell* claim under the express policy theory" where he failed to identify a *written* policy); *Brogsdale v. Torres-Corona*, 23 C 10105, 2024 WL 3052129, at *5 (N.D. Ill. June 19, 2024) (*citing Alcorn v. City of Chicago*, No. 17 C 5859, 2018 WL 3614010, at *15 (N.D. Ill. July 27, 2018) (explaining that an express policy requires showing either explicit language in the policy that violates someone's rights or the omission of language in a policy that violates someone's rights); *Taha*, 947 F.3d at 469 (quoting *Iqbal*, 556 U.S. at 678) (A complaint must plead "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" It is not sufficient for a plaintiff to tender "'naked assertions' devoid of 'further factual enhancement.'") (internal quotations and citations omitted).

To the extent Plaintiff intends to set forth a pattern and practice theory, his *Monell* claim is nevertheless insufficiently plead. In the absence of an explicit unlawful policy, a city may be liable for a widespread custom, such as when a plaintiff "show[s] a series of bad acts and invit[es] the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995). A plaintiff must thus allege "a general pattern of repeated behavior" as opposed to "a mere

13

isolated event." *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006). And though no "bright-line rules defin[e] a 'widespread custom,'" the Seventh Circuit has stressed that "one instance is, or in some cases even three instances are, insufficient to 'demonstrate that there is a policy at issue rather than a random event.'" *Carmona v. City of Chicago*, No. 15-CV-00462, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018) (quoting *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010)); *Cosby v. Rodriquez*, 23 C 2236, 2024 WL 167711, at *18 (N.D. Ill. Jan. 16, 2024). "Courts in this district regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered." *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. Mar. 24, 2020) (quoting *Carmona*, 2018 WL 306664, at 2); *see also Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at 2 (N.D. Ill. 2016) (rejecting *Monell* claim because plaintiff's own experiences were the only allegations of misconduct); *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at 4 (N.D. Ill. 2016) (rejecting *Monell* claim because plaintiff's own experiences were the only allegations of misconduct); *Winchester v. Marketti*, 2012 WL 2076375, at 4 (N.D. Ill. 2012) ("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."); *Jones v. Feinerman*, 2011 WL 4501405, at *6 (N.D. Ill. 2011).

Here, Plaintiff alleges that he was personally unable to change his demographic information after submitting documents to CPD and requesting that his demographic information be changed. FAC at ¶¶7-9. Plaintiff does not set forth any example of any other individual who was unable to update their demographic information with CPD. *See generally, id.* Accordingly, the result here should be the same as in *Petropoulos*, *Arita*, *Winchester*, and *Jones*, and the Court should dismiss Plaintiff's *Monell* claims for failing to plausibly allege a basis for municipal liability. Plaintiff has not sufficiently set forth facts to support a *Monell* claim under any theory, and the Court should dismiss Counts III and IV.

## V. **Declaratory Judgments are not Independent Causes of Action (Count V).**

Plaintiff purports to bring a claim for "declaratory relief" in Count V. FAC at ¶¶79-86. A declaratory judgment, however, is a remedy for an underlying cause of action, not a separate, substantive claim for relief. *See Mohammad v. IndyMac Bank, F.S.B./One W. Bank, F.S.B.*, No. 16 C 7241, 2018 WL 1252112, at *6 (N.D. Ill. Mar. 12, 2018) (dismissing count "for declaratory and injunctive relief" for "failure to state an independent claim upon which relief can be granted."); *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016) ("[R]equests for declaratory judgment and injunctions are not independent causes of action."). "It is well established that the Declaratory Judgment Act does not create an independent cause of action. It provides only an additional form of relief." *Morris v. Mfrs. Life Ins. Co.*, No. EV 95-142-C H/H, 1997 WL 534156, at *10 (S.D. Ind. Aug. 6, 1997); *see also Keesler v. Electrolux Home Prods., Inc.*, No. 16 C 199, 2016 WL 3940114, at *3 (N.D. Ill. July 21, 2016). Therefore, Plaintiff's Count V should be dismissed.

WHEREFORE, for the reasons stated above, the City respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice, and any other relief that this Honorable Court deems just and proper.