IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MOHAMMAD YUSUF, | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-01394 |
| | ) | |
| v. | ) | Jury Trial Demanded |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, | ) | |
| Defendant. | ) | |

**RESPONSE TO DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS
(DKT38) PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff Yusuf by one of his counsel, Christopher Cooper, and states as follows in opposition to the motion to dismiss:

*Defendant's motion to dismiss reads like a motion for summary judgment.

**RESPONSE TO SEC DENOTED FACTUAL BACKGROUND &
Plaintiff's CPD Personnel Form**

Plaintiff does not dispute that he selected "Caucasian" even though he does not and did "not identify[] as white"; rather, his correct genetic racial designation is "African". Plaintiff alleges that at some point after 2004, he "sought to change his racial designation" on his personnel form. *Id.* at ¶7; *see also* Plaintiff's 2023 Personnel Contact and Data Form ("2023 Personnel Form"), attached hereto as DEF Exhibit 1.

Separate and apart from Mr. Yusuf's claim that he can maintain a cause of action because he has been denied a request to change his race to African, he also alleges CPD maintains a blanket prohibition against individuals changing their racial designation. Defendant takes issue with the Plaintiff's use of the phrase "Racial Identity Policy Ban." The Plaintiff retorts that he should be permitted to define the landscape anyway that he chooses.

1

Defendant's position seems to be that denial of race change claim must fail if the Court, at the future summary judgment juncture, concludes that Plaintiff has not provided evidence of a blanket prohibition. Plaintiff respectfully disagrees.

**PLAINTIFF'S RESPONSE TO: II. Plaintiff's Application for Promotion and the Sergeant Promotion Process**

Plaintiff does not disagree with Defendant's synopsis of the Complaint; however, Plaintiff argues that he has complied with pleading required under F.R.C.P. 8 and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). He disagrees with Defendant's position that his statements are conclusory as much as he disagrees with Defendant's summary judgment approach at the motion to dismiss stage.

**PLAINTIFF'S RESPONSE TO SECTION DENOTED ARGUMENT & SECTION DENOTED: Plaintiff Insufficiently Alleges Title VII Disparate Treatment Based on His Alleged Inability to Change His Racial Designation on Personnel Paperwork (Count I).**

F.R.C.P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)....

*Plaintiff has alleged that he is a member of a protected class, namely, African. (See Compl*¶34). To the extent that the City of Chicago defines Yusuf as white, Plaintiff holds that in setting forth a prima facie case of reverse discrimination suits (*i.e.,* cases brought by a white plaintiff), Yusuf must show at the summary judgment juncture (not at the motion to dismiss stage) that "background circumstances sufficient to demonstrate that the particular employer has 'reason or inclination to discriminate invidiously against whites' [or men] or evidence that 'there is something "fishy" about the facts at hand.' " *See Ineichen v. Ameritech,* 410 F.3d 956, 959 (7th

Cir.2005) (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir.2003))."[T]he conventional *McDonnell Douglas* framework is not helpful in Yusuf to the extent that Defendants and or the Court define him as white. (See *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 457 (7th Cir.1999); *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir.2005); and *Gore v. Ind. Univ.,* 416 F.3d 590, 592 (7th Cir.2005).

**Plaintiff Yusuf has provided short and plain statements that he was performing satisfactorily:**

> **COMPLAINT ¶26.** Yusuf was qualified to be promoted to sergeant.
>
> **COMPLAINT ¶30** Despite Yusuf's exemplary qualifications and the purported race-neutral policy of the Merit System, Yusuf has been repeatedly bypassed for promotion in favor of less qualified candidates, based on their race, some of whom had disciplinary issues and were not suitable for the responsibilities of a sergeant.

**Plaintiff Yusuf has provided a short and plain statement that his race is the motivating factor in the treatment he has endured ((a) denied an opportunity to change his race; and (b) denied promotional opportunities because he is defined by the Chicago Police Department as white. See:**

> **Compl. ¶34.** But for Plaintiff identifying as African, Defendant would not have denied Plaintiff a race change entry in CPD administrative records.

**PLAINTIFF'S RESPONSE TO: Plaintiff does not allege that race was the motivating factor in his inability to update his racial designation in his personnel paperwork**

Plaintiff does allege **that race was the motivating factor:**

> **Plaintiff's Complaint paragraph # 45 reads:** Race is and was a motivating factor in Defendant's refusal to permit Plaintiff to change his race in CPD administrative paperwork.

**PLAINTIFF'S RESPONSE TO: B. Plaintiff does not allege that similarly situated employees were allowed to update their racial designation in their personnel paperwork**

**Plaintiff's Complaint paragraph # 46 reads:** Similarly situated employees (especially as to gender) of the CPD have not been denied a right to change protected class identity markers.

**PLAINTIFF'S RESPONSE TO: Plaintiff does not allege an adverse action in his inability to update his racial designation in his personnel paperwork.**

Plaintiff does allege a material employment adverse action. The City of Chicago, in its memorandum in support of its motion to dismiss, is asserting that where a person identifies as a particular race, based on his\her genetic bloodline, that it (Chicago) can disregard that person's self-identity. The jurisprudence of *Carolene Products*, 304 U.S. 144 (1938) should be interpreted to represent that a human being has a fundamental right (protected by substantive due process) to identify with the race of his bloodline.

Plaintiff Yusuf represents that such right is deeply rooted in U.S. history and tradition, and must be viewed in light of evolving social norms (which include broadened categories for race identification on forms, etc). Yusuf's right to identify as African is not explicitly listed in the Bill of Rights, but rather are the penumbra of certain Amendments that refer to or assume the existence of such human rights in issue. This has led the Supreme Court to find that personal and relational rights are fundamental and protected. **By example, one of those** rights is to marry a person of a different race: *Loving v. Virginia*, 388 U.S. 1 (1967). Simply stated, the position of the City of Chicago's motion to dismiss is border-line bigotry and outdated ideology as to the matter of the race identification change. (*Cf.* Plessy v. Ferguson, 163 U.S. 537, 538, 16 S. Ct. 1138, 1138, 41 L. Ed. 256 (1896), overruled by *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 873 (1954), the Court having written as to Plessy's identification: he "was a citizen… of mixed descent, in the proportion of seven-eighths Caucasian and one-eighth African blood; that the mixture of colored blood was not discernible in him, and that he was entitled to every recognition, right, privilege, and immunity secured to the

4

citizens of the United States of the white race…). Using the City of Chicago's logic in its motion and memorandum (Dkt38-39), Plessy would be, in 2024, a representation of a recalcitrant troublemaker in defining himself as he did. Clearly, the City's motion; although likely inadvertently, unfairly attacks race identification of Africans joined with an assault on race-based self-identification. Similarly, the City of Chicago in its memorandum in support of the motion to dismiss seeks that the District Court ignore the instructions of *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 140 S. Ct. 1731, 1747, 207 L. Ed. 2d 218 (2020), specifically as to the Bill of Rights and Congress not having spoken directly to an issue. Quoting the Court [internal quotations omitted]:

> Nor is there any such thing as a "canon of donut holes," in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule. And that is exactly how this Court has always approached Title VII. "Sexual harassment" is conceptually distinct from sex discrimination, but it can fall within Title VII's sweep. *Oncale*, 523 U.S. at 79–80, 118 S.Ct. 998. Same with "motherhood discrimination." See *Phillips*, 400 U.S. at 544, 91 S.Ct. 496. Would the employers *670 have us reverse those cases on the theory that Congress could have spoken to those problems more specifically? Of course not. As enacted, Title VII prohibits all forms of discrimination because of sex, however they may manifest themselves or whatever other labels might attach to them.
> Bostock at 669–70.

An employer's attack on a person's right to associate and identify with a genetic bloodline (as is the landscape for Yusuf) is a material employment adverse action.

The second jurisprudential area of support for the proposition that Plaintiff suffered an adverse action, is found in the approach of the 7th Circuit in *Lavalais v Melrose Park*, 734 F.3rd 629 (2013). Like in the instant case, the 7th Circuit was faced with an atypical claim of a material adverse action. (Lavalais at 633-635 for a sense of the irregular).

At the motion to dismiss stage, Plaintiff-Appellant Lavalais averred that he had been promoted to the rank of sergeant by his employer, the Melrose Park Police Department. (Lavalais

at 629). He further averred that because he is black, he was not permitted to supervise white officers. (Lavalais at 634-635). His claim included that was denied a transfer to another shift; however, was not a crux basis of the 42 USC 1983 race claim. The 7th Circuit held that the former averment formed a basis for a material adverse employment action; although, the claim did not implicate traditional claims of termination, suspension, or demotion; however, such represented an alteration of terms and conditions of employment since Lavalais was unable to perform as would --and could-- a police sergeant. After all, there were impediments to allowing for performance. The 7th Circuit found Lavalais' claims of an adverse action, to be meritorious; although, demotion, suspension, or termination had not occurred. The 7th Circuit having written in part [internal quotations omitted]:

> [A] "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, *significantly diminished material responsibilities,* or other indices that might be unique to a particular situation." *Oest v. Ill. Dep't of Corrs.,* 240 F.3d 605, 612–13 (7th Cir.2001) (quotation and citation omitted) (emphasis added); *see also Porter v. City of Chicago,* 700 F.3d 944, 954 (7th Cir.2012) (explaining that a "materially adverse change might be indicated by a ... demotion evidenced by ... significantly diminished material responsibilities").

Lavalais at 634.

Plaintiff Yusuf seeks that the District Court undertake the same approach as did the 7th Circuit in Lavalais (atypical adverse actions are possible), to conclude that Mr. Yusuf, by having been denied a race identification change opportunity, has suffered a material adverse action.

While a case on point is not available, Plaintiff Yusuf once again cites <u>Bostock v. Clayton</u> for its analogous reasoning as to the ways in which it can be concluded that discrimination was -- or is afoot. While Bostock implicated termination and sex as opposed to race…, the case is still applicable herein since the Bostock Court focused on actions of an employer which evince sex

6

discrimination (detached from termination) regardless of the employer's denials or labels. Judge Gorsuch writing for the majority [internal quotations omitted]:

> The lessons these cases hold are instructive here. First, it is irrelevant what an employer might call its discriminatory practice, how others might label it, or what else might motivate it. In *Manhart*, the employer might have called its rule a "life expectancy" adjustment, and in *Phillips*, the employer could have accurately spoken of its policy as one based on "motherhood."

Bostock 645–46

Clearly, Yusuf's saga is mired in a race issue. If the City of Chicago accepted that he is African, we would not be here. We are left with the current landscape in which the decision not to allow the race re-classification to African, is motivated by race. And as Bostock instructs, it need not be maliciously based. (Id).

## II. Plaintiff Insufficiently Pleads an Equal Protection Claim (Count I).

The equal protection clause guards against government discrimination on the basis of race and other **immutable** (emp., on immutable) characteristics and also extends to protect people from "class-of-one" discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment. *Brunson v. Murray,* 843 F.3d 698, 705 (7th Cir. 2016).

The existence of a similarly situated individual is not required to support a class-of-one equal protection claim (as is Yusuf's claim). Id, passim. Plaintiff need not allege that a policy "had a discriminatory effect." He has sufficiently alleged is a member of a protected class, that he was treated differently from similarly situated members of the unprotected class, and that he was treated differently because of his protected status. (*Cf. McCauley v. City of Chicago*, 671 F.3d 611, 615-6).

Yusuf, as of now, presents, in part, a fact pattern predicated on a class-of-one theory (although he need not identify theories, since under the Federal Rules of Civil Procedure, "it is factual allegations, not

legal **theories**, that must be pleaded in a complaint." *Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014); *see also* **Rabé** *v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal **theories**, and specifying an **incorrect theory** is not a fatal error." (Id)) . **Yusuf believes he has adequately pled "irrational and wholly arbitrary treatment" in the City's refusal to allow him to change his race on Chicago Police Department forms.** As important, "Equal-protection claims alleging discrimination in public employment can be analogized to claims under Title VII. Importing the prima facie case requirements from Title VII doctrine makes sense in the public-employment context, but that approach does not apply more broadly to all equal-protection cases. (*McCauley, supra.,* at 616).

**PLAINTIFF'S RESPONSE TO: IV   Plaintiff Fails to Plausibly Allege that a Municipal Policy or Practice was the Moving Force Behind a Constitutional Deprivation He Suffered (Counts III and IV).**

Plaintiff states that he did make the required allegations at ¶¶65-66"

65. The policy and custom demonstrates the City of Chicago's fault (deliberate indifference).

66. The City of Chicago, with its municipal action, was and continues to be the moving force behind the federal violation.

**PLAINTIFF'S RESPONSE TO: IV   Declaratory Judgments are not Independent Causes of Action (Count V).**

The Declaratory Judgment Act allows federal courts to render declaratory judgments only when an "actual controversy" exists. 28 U.S.C. § 2201(a).  A claim for declaratory relief must show "that there is a substantive controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Simic v.*

*City of Chi.*, 851 F.3d 734, 740 (7th Cir. 2017) (citing *Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)).

Declaratory relief requires "ongoing or impending" harm. *Swanigan v. City of Chi.*, 881 F.3d 577, 583 n.2 (7th Cir. 2018) (citing *Feit v. Ward*, 886 F.2d 848, 857 & n.11 (7th Cir. 1989). The standing requirement inheres in Article III of the Constitution, which requires that a party seeking to invoke the jurisdiction of the federal courts must present an 'actual case or controversy.' " *Perry v. Sheahan,* 222 F.3d 309, 313–14 (7th Cir.2000), quoting *City of Los Angeles v. Lyons,* 461 U.S. 101, 103 (1983). Plaintiff Yusuf has presented an 'actual case or controversy" as in Yusuf has "a personal stake in the outcome[.]" *Perry,* 222 F.3d at 313.

To establish standing, Yusuf must show (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendants' actions; and (3) that a favorable decision is likely to redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).

Yusuf has satisfied his burden of supporting the allegations necessary for standing. (*Cf. Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856, 862 (7th Cir.1996). He has presented the particularized interest of his right to a race re-classification. A favorable decision will redress the injury of having been denied the right to change his classification.

A declaratory judgment is needed where parties are uncertain of their obligations going forward (*E.g., Certified Grocers Midwest, Inc. v. New York Life Ins. Co.,* 814 F.Supp. 34, 36 (N.D.Ill.1992) (determination of penalty in order to prepay mortgage note); *AC & S, Inc. v. Aetna Cas. & Surety Co.,* 666 F.2d 819, 822–23 (3d Cir.1981) (determination of coverage and

duty to defend insurance claims); *Kucala Enter., Ltd. v. Auto Wax Co., Inc.,* No. 02 C 1403, 2003 WL 21230605, at *1 (N.D.Ill. May 27, 2003) (accused infringer seeks determination of invalidity and non-infringement of patent).

In Yusuf, there is a realistic prospect that there will be a need to declare the rights of the parties for a future purpose. This is apparent by the City's refusal to permit Plaintiff to make the in issue classification change.

WHEREFORE, for the reasons stated above, the Plaintiff respectfully requests that the Court deny Defendant's motion (Dkt38).

**DATED: 12-3-2024**

Respectfully Submitted,
s\Christopher Cooper, ESQ., Plaintiff's Counsel
Law Office of Christopher Cooper, INC.
426 N. Broad Street, Griffith, IN 46319
Tel: 312 473 2968; 219 228 4396 FAX: 866 334 7458; E-mail: cooperlaw3234@gmail.com

CERTIFICATE OF SERVICE: The undersigned certifies he caused the foregoing to be filed on 12-3-2024 and that Defendant is a registered e-filer. s\Christopher Cooper