IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOHAMMAD YUSUF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 24-cv-01394 |
| v. ) | |
| ) | Hon. Joan B. Gottschall |
| ) | |
| CITY OF CHICAGO, ) | Magistrate Judge Maria Valdez |
| ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant City of Chicago (hereinafter "the City"), by and through its attorney, the Office of the Corporation Counsel, respectfully submits the following Reply in support of its Motion to Dismiss Plaintiff Mohammad Yusuf's ("Plaintiff") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6):

**INTRODUCTION**

Plaintiff's Complaint does not allege that he was treated differently on the basis of his race. Plaintiff's Response attempts to dance around this simple fact, but it does not provide a basis to avoid dismissal. Indeed, Plaintiff has voluntarily dismissed his claim of racial discrimination with respect to promotion practice. Plaintiff's remaining allegations, then, hinge entirely on a single claim: that he was subject to a blanket CPD paperwork policy that applies to all officers, regardless of race. That is not enough to state a claim for racial discrimination. He does not allege that his race was the motivating factor in his inability to update the racial designation on his personnel paperwork, he does not allege that similarly situated employees were allowed to update their racial designation, he does not allege that other employees even attempted to change their racial designation and were denied, and he does

1

not plausibly allege that a municipal policy or practice was the moving force behind a constitutional deprivation he suffered. As a result, his Complaint should be dismissed.

## ARGUMENT

**I. Plaintiff Insufficiently Alleges Title VII Disparate Treatment Based on His Alleged Inability to Change His Racial Designation on Personnel Paperwork (Count I).**

### A. Plaintiff does not allege that race was the motivating factor in his inability to update his racial designation in his personnel paperwork

As the City has noted, Title VII makes it unlawful for an employer to discriminate against employees on the basis of race, and race must be a motivating factor for the adverse action suffered in order to bring a Title VII claim. *See* 42 U.S.C. § 2000e-2(a)(1), § 2000e-3(a); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 2345 (2009). Plaintiff's Response notes that his Complaint includes the allegation that "Race is and was a motivating factor in Defendant's refusal to permit Plaintiff to change his race in CPD administrative paperwork." Plaintiff's Response ("Resp."), Dkt. No. 40, p.3; Plaintiff's First Amended Complaint ("Am. Compl."), Dkt. No. 33, ¶45. The Court, however, need not accept "threadbare recitals of the elements of a cause of action" as true, especially when they are "supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007).

Here, Plaintiff's allegations are worse than conclusory, in that they fatally undermine his recitation. He claims that "but for Plaintiff identifying as African, Defendant would not have denied Plaintiff a race change entry in CPD administrative records" *and* that "but Plaintiff identifying as white, Defendant would not have denied Plaintiff a race change entry in CPD administrative records." Am. Compl. ¶¶34-35. Plaintiff's allegations make clear that the alleged denial would have happened *regardless of his racial identity. See id.* Therefore, Plaintiff has admitted that the alleged denial was *not* racially motivated, and he has pled himself out of court.

Plaintiff's Response completely misunderstands the City's argument regarding CPD's alleged blanket prohibition of racial designation changes. *See* Resp. p.2. Plaintiff characterizes the City's position as a "summary judgment argument" about whether there is evidence for such a prohibition. *Id.* This is incorrect. Presuming the truth of the existence of the alleged prohibition, as we must at this stage, does not save Plaintiff's claim. In fact, the very *blanket* nature of the alleged prohibition is what undermines Plaintiff's claim. A blanket prohibition on changes means that all CPD officers, regardless of race, are prohibited from changing their racial designation paperwork. This in turns means that no officer, Plaintiff included, is being denied a change *on the basis of their individual race*.

**B. Plaintiff does not allege that similarly situated employees were allowed to update their racial designation in their personnel paperwork**

Plaintiff's Response similarly misunderstands whether an individual is 'similarly situated' in a Title VII context. In order to be a "comparator," an employee would need to have "engaged in similar conduct" as Plaintiff. *See Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014). Plaintiff incorrectly asserts that employees who have engaged in different conduct, namely requesting a gender (rather than race) designation paperwork change, are similarly situated to himself. *See* Resp. p.4. Plaintiff tries to elide the distinction between gender and race by claiming that the identified employees have made requests to change "protected class identity markers," as he has. Resp. p.4; Am. Compl. ¶46. Plaintiff's claim, however, is not that CPD maintains a generic prohibition of changing protected class identity markers, but rather that CPD categorically enforced a blanket "prohibition of changing one's *race*." Am. Compl. ¶38 (emphasis added). Plaintiff does not allege that the employees who have requested to change their gender designation have been able to change their racial designation, nor has he alleged that he has been unable to change his own gender designation. In other words, Plaintiff's references to gender designation changes are completely irrelevant, and he has not alleged that any CPD employees, similarly situated or otherwise, were treated more favorably than he was with regarding to changing their race designation.

### C. Plaintiff does not allege an adverse action in his inability to update his racial designation in his personnel paperwork

As the City has noted, "not everything that makes an employee unhappy is an actionable adverse action … [o]therwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). The only potential Title VII adverse action Plaintiff has alleged is that CPD has refused to allow him to "change-update his racial designation." FAC at ¶48. In and of itself, however, Plaintiff's racial designation has no impact on any of the terms or conditions of his employment, and his inability to update his designation did not create any "quantitative or qualitative change in the terms or conditions of employment." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 902 (7th Cir. 2003). Plaintiff fails to distinguish from the City's authority regarding materially adverse actions, and instead argues that *U.S. v. Carolene Products* should be interpreted to hold that "a human being has a fundamental right (protected by substantive due process) to identify with the race of his bloodline." 304 U.S. 144, 58 S. Ct. 778 (1938); Resp. p.4. Plaintiff, however, fails to point to anything in *Carolene Products* that supports such an assertion, or why such an assertion would be relevant in Title VII adverse action analysis.[1] Such "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016); *see also Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 n.2 (7th Cir. 2019) ("As briefed, the argument is terse, free of legal citation, and vague. It is therefore waived.").

---

[1] Plaintiff also asserts that his "right to identify as African" is based on "the penumbra of certain Amendments that refer to or assume the existence of human rights in issue." Resp. p.4. Plaintiff does not, however, identify any specific amendment or specific reference regarding a right to racial self-identification. *Id.* Nor does Plaintiff identify how his purported "right to identify as African" is relevant to his claim that he was prohibited from changing internal CPD paperwork. *Id.*

Plaintiff also argues in his Response that the City asserts its can "disregard" a "person's self-identity," which in turn is "based on his\her genetic bloodline." Resp. p.4[2] There are no allegations in Plaintiff's Complaint, however, that the City is "disregarding" his racial identity, or preventing him from self-identifying however he wishes. Plaintiff also asserts that the City has attacked his "right to associate and identify with a genetic bloodline." *Id.* p.5. Again, there are no allegations in the Complaint that the City has prevented Plaintiff's personal self-identification or infringed on his freedom of association. Such new and vague assertions should be disregarded. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); Escutia v. Carnival Corp., 2024 WL 1931703 (S.D. Fl. Mar. 13, 2024) ("It is well established that a plaintiff cannot successfully defend the adequacy of his complaint [] by referring to allegations not in the Complaint and supplementing (through rhetoric in a memorandum) his existing complaint in a response to a motion to dismiss."); *Brown v. J.P. Turner & Co.*, 2011 WL 18825222 at *5 (N.D. Ga. May 17, 2011) ("It is 'plainly inappropriate' to raise allegations for the first time in response to a motion to dismiss"); *Erb v. Adv. Sales & Mktg. LLC*, 2012 WL 3260446 at *3 (N.D. Ala. Aug. 3, 2012) ("Motions to dismiss…test the sufficiency of the factual allegations contained in the complaint, and a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.").

Plaintiff's assertion that the paperwork change denial is prohibiting him from personally identifying as African is also belied by the form itself, which indicates that the racial designation is

---

[2] Plaintiff has offered confused and contradictory assertions regarding the absolute (or otherwise) nature of racial identity. For example, Plaintiff alleges that racial categories are "socially constructed," that he "*currently* identifies as Egyptian and African American," and that it is the CPD who told him that "racial identity is immutable." Am. Compl. ¶¶1, 10, 14 (emphasis added). Plaintiff also asserts, however, that there are "correct" and "incorrect" "genetic racial designation[s]," that DNA tests can confirm a person's race, and that race is an "*immutable* characteristic." Resp. p.1, 7 (emphasis original); *see* Am. Compl. ¶¶8-9, 48.

"used for statistical purposes only." *See* Defendant's Memorandum ("Memo."), Dk. No. 39, Ex.1. It also ignores that it was Plaintiff himself who self-identified as "Caucasian" on the form, despite having the option to identify as "African American." Am. Compl. ¶¶3-4.

Moreover, despite Plaintiff's assertions to the contrary, the City has not "attack[ed] race identification of Africans" or "race-based identification." Resp. p.5. The City's contention is that Plaintiff has not alleged any potential adverse employment action outside of a denial of racial designation paperwork change, and that such denial is not sufficient to constitute a materially adverse action under Title VII. Plaintiff's own authority implicitly concedes the same. In *Lavalais v. Vill. of Melrose Park*, the court found that an alteration of the terms and conditions of employment in the form of "significantly diminished material responsibilities," could constitute a materially adverse action. 734 F.3d 629, 634 (7th Cir. 2013). Plaintiff, however, has not alleged any diminishment of his responsibilities, nor any alterations of the terms or conditions of his employment whatsoever. Plaintiff's inability to change his self-selected racial designation, on an internal form used only for statistical reporting purposes, is exactly the kind of "minor…employment action[]" that is insufficient to form the basis of a discrimination suit. *See Smart*, 89 F.3d at 441.

## II. <u>Plaintiff Insufficiently Pleads an Equal Protection Claim (Count I).</u>

Plaintiff's Response implicitly concedes that he has not alleged that he was treated differently than other similarly situated employees. *See* Resp. pp.7-8. Because Plaintiff does attempt to distinguish from the City's precedent or otherwise address the City's argument on this issue, he has waived any argument to the contrary. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver."); *Wojtas v. Cap. Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (concluding that plaintiff waived argument by failing to address it in response to motion to dismiss); *Farnham v. Windle*, 918 F.2d 47, 51 (7th Cir. 1990) (concluding that plaintiff waived right to brief additional legal theories not briefed in opposing motion to dismiss); *Edwards v. Norfolk S. Ry. Co.*,

17 C 3608, 2018 WL 5013532, at *2 (N.D. Ill. Oct. 15, 2018) (citing *Lekas v. Briley*, 405 F.3d 602, 615 (7th Cir. 2005) (failure to present legal argument or cite relevant authority in response to a motion to dismiss results in waiver of that claim).

Plaintiff instead argues that such allegations are not "required to support a class-of-one equal protection claim (as is [Plaintiff's] claim)." *Id.* p.7. Plaintiff's assertion that he is bringing a class-of-one claim, however, does not save his Equal Protection portion of Count I. This is because well-established law prohibits Fourteenth Amendment "class of one" claims against public employers:

> Ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly "constitutionalize" the employee grievance. *Connick*, 461 U.S., at 154, 103 S.Ct. 1684. "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Bishop*, 426 U.S., at 349, 96 S.Ct. 2074. Public employees typically have a variety of protections from just the sort of personnel actions about which [the plaintiff] complains, but the Equal Protection Clause is not one of them.

*Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 609 (2008). "A 'class-of-one'-type equal protection claim cannot be asserted in the public employment context; the Supreme Court has made that clear." *Kelly v. City of Chicago*, 22 C 4535, 2023 WL 1779819, at *2 (N.D. Ill. Feb. 5, 2023) (citing *Engquist*, 442 U.S. at 607. Accordingly, Plaintiff has failed to plausibly allege a due process claim.

### III. Plaintiff Has Conceded His Section 1981 Discrimination Claim (Count II).

Plaintiff has conceded that his allegations cannot sustain a Section 1981 racial discrimination claim regarding the CPD's promotion practices, and he has voluntarily dismissed Count II of his Complaint. *See* Voluntary Dismissal, Dkt. No. 41.

### IV. Plaintiff Fails to Plausibly Allege that a Municipal Policy or Practice was the Moving Force Behind a Constitutional Deprivation He Suffered (Counts III and IV).

Plaintiff's Complaint alleges two "*Monell* Counts" under 42 U.S.C. § 1983 in Counts III and IV. It is well established that Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S. Ct. 1865, 1870 (1989). Count III contains allegations related to deprivations of "a

7

federal right to present and define race based on DNA" and "a federal right (substantive due process) to identify with the race consistent with his\her DNA," meaning it is the vehicle for Plaintiff's Equal Protection claim in Count I. Am. Compl. ¶¶62-63. On the other hand, Count IV contains allegations related to equal treatment with respect to the CPD's promotion practices, and is therefore the vehicle for Plaintiff's Section 1981 claim in Count II. *Id.* ¶¶69-74. However, because Plaintiff's Section 1981 promotion practice claim has now been dismissed, the related Monell "count" is moot, as there is no longer any substantive claim for it to vindicate. Therefore, Plaintiff's Count IV, which relates only to his dismissed Count II, should be similarly dismissed.

As a general matter, *Monell* liability requires deprivation of a constitutional right resulting from a municipal policy or custom. *See Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023). Despite Plaintiff's repeated contention that the City's arguments evince a "summary judgement approach," it remains Plaintiff's burden at the pleading stage to "plead factual content that allows the court to draw the reasonable inference" that the City maintained a policy, custom, or practice of intentional discrimination against a class of persons to which the plaintiff belonged. Resp. p.2; *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1949; *Monell*, 436 U.S. at 694).

The City contends that Plaintiff has failed to allege a constitutional deprivation in his Complaint, and he has likewise failed to identify a deprivation in his Response. As noted *supra*, Plaintiff counters that the Court should find that *Carolene Products* established a "fundamental right (protected by substantive due process) to identify with the race of his bloodline" and that the "penumbra of certain Amendments … assume the existence of such human rights." Resp. p.4. Plaintiff does not provide further authority for his claimed "right to identify with the race of his bloodline," nor does he indicate the counters of such a right would be. *Id.* Even if such a right did exist, as also noted *supra*, there are no allegations in the Complaint that the City has infringed on Plaintiff's ability to personally

8

racially identify however he wishes. Plaintiff's characterization of the City's position as "border-line bigotry" is rhetorical bluster, and his contention that the logic of the City's position would lead to the description of the plaintiff in *Plessy v. Ferguson* as no more than a "recalcitrant troublemaker" is wildly off the mark. 163 U.S. 537, 16 S. Ct. 1138 (1896); Resp. pp.4-5. Simply put, Plaintiff has not identified an established constitutional right that has been infringed, and he has failed to allege that the City has infringed on the new right he asks this Court to recognize.

Plaintiff also fails to sufficiently allege the existence of a policy, custom, or practice of intentional discrimination. While Plaintiff can certainly "define the landscape" of his allegations as he wishes (Resp. p.1), he does not point to any written policy by the CPD, and his characterization of his change request denial as a "Racial Identity Policy Ban" does not conjure a written policy into existence. Plaintiff therefore cannot proceed under an express policy theory. *See Barr v. Town of St. John, et al.*, 2:23-CV-335 JD, 2024 WL 3534611, at *9 (N.D. Ind. July 24, 2024). Plaintiff also fails to allege "a general pattern of repeated behavior" beyond the single case of his own denial. *See Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006). As a result, Plaintiff similarly cannot proceed under a pattern and practice theory. *See Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 841 (N.D. Ill. Mar. 24, 2020).

Plaintiff's only response to the City's arguments is to point to allegations in the Complaint that the City's "policy and custom" "was an continues to be the moving force behind the federal violation." Resp. p.8; Am. Compl. ¶¶65-66. Such bare recitals, however, need not be taken as true. *Iqbal*, 556 U.S. at 678. Moreover, Plaintiff's failure to substantively respond to the City's argument on the issue results in waiver of any argument to the contrary. *See Bonte*, 624 F.3d at 466. Because Plaintiff has not alleged a constitutional deprivation caused by municipal action, he cannot proceed under a *Monell* theory of liability.

### V. Plaintiff Has Waived His Separate Count for Declaratory Judgment (Count V).

Plaintiff's Response contends that he has standing to request declaratory relief. *See* Resp. pp.8-10. The Response entirely ignores, however, the City's argument that declaratory judgments are not separate, substantive claims for relief. *Id.*; *see Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016). Plaintiff has therefore waived argument on the issue, and the count purporting to bring a substantive claim for declaratory relief should be dismissed. *See Bonte*, 624 F.3d at 466.

WHEREFORE, for the reasons stated above, the City respectfully requests that this Honorable Court dismiss Plaintiff's Complaint with prejudice, and any other relief that this Honorable Court deems just and proper.

Dated: December 19, 2024

Respectfully submitted,

Office of the Corporation Counsel

By: *s/ Benjamin H. Cook*
Benjamin H. Cook
Assistant Corporation Counsel

City of Chicago, Department of Law
Employment Litigation Division
2 North LaSalle Street, Suite 640
Chicago, Illinois 60602
(312) 742-3931
Benjamin.Cook@cityofchicago.org