**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MOHAMMAD YUSUF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-1394 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Before the court is the City of Chicago's Motion to Dismiss, Dkt. No. 59, plaintiff Mohammad Yusuf's Third Amended Complaint ("TAC"), Dkt. No. 55. For the reasons set forth below, the motion is granted. Yusuf will be given an opportunity to amend his complaint one more time to plead a plausible claim, subject to the limitations discussed herein.

This case is long on facts, long on theories, and short on argument and citations to relevant precedent. The TAC's six counts arise variously under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. §§ 1981 and 1983; the First Amendment; the Equal Protection Clause; and *Monell*. *See Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The court will describe the facts alleged in the TAC, to the extent it understands them, and it will then proceed to discuss what claims it finds to have been waived for inadequate argument and lack of citation to relevant precedent, as well as what claim(s) Yusuf may attempt to raise again, if he chooses to do so. As for Yusuf's two *Monell* claims, they will be dismissed insofar as they are pleaded in the TAC, but they may be repleaded if Yusuf is able to do so consistent with the claim(s) which the court has found to be potentially actionable.

## BACKGROUND

Yusuf alleges that he is and identifies as North African/Egyptian (Middle Eastern and North African or "MENA"). TAC ¶¶ 11, 15. But when he was hired in 2004 as a Chicago Police

Officer and filled out the required personnel paperwork, there was no category for MENA, and he was "forced" (the meaning of this term is not explained) to select a race from three inapplicable categories: Caucasian, Hispanic, and African American. TAC ¶¶ 11–23. He pleads that he chose "Caucasian," even though he is not and has never identified as Caucasian. TAC ¶¶ 6–7, 11–15. He complains further that in or around 2023–24, the Chicago Police Department ("CPD") expanded the racial designation categories available "from three to nine options for newly hired officers" to include "categories such as 'Asian,' 'American Indian or Alaska Native,' 'Native Hawaiian or Pacific Islander,' and 'Two or more races.'" TAC ¶ 18. Yusuf does not allege that any of these categories matches the identity he claims. However, he alleges that in 2023, he "formally requested that CPD correct his racial designation from the forced misclassification of 'Caucasian' to accurately reflect his actual race as North African/Egyptian" but that "CPD categorically denied Yusuf's request . . . , stating that racial identity on personnel records is 'immutable' and cannot be changed once initially selected." TAC ¶¶ 19, 21. Yusuf further complains that CPD's "gender identity change policy allows officers to update their records to 'match their lived experience,'" and that CPD's treatment of race as opposed to gender is "pretextual and discriminatory." TAC ¶¶ 24–27 (quotations in ¶¶ 26–27).

Yusuf pleads that on March 28, 2024, the federal Office of Management and Budget ("OMB") revised its Statistical Policy Directive No. 15 to add MENA "as a minimum reporting category for federal agencies." TAC ¶ 28. Yusuf does not allege that this OMB action was binding on the City or the CPD. Rather, he alleges that it was an acknowledgement by the federal government that Middle Eastern or North African individuals constitute a "distinct racial/ethnic category separate from 'White' or 'Caucasian.'" TAC ¶ 29.

Yusuf's TAC includes many factual allegations concerning CPD's policies and practices for promotion to sergeant, which he alleges were discriminatory and corrupt. *See* TAC ¶¶ 55–69. He alleges that the CPD had two promotion systems, one based on an examination and one, which he calls a "'merit' promotion system," in which "[s]uperiors nominate subordinates for a process intended to recognize the merit of officers who are not suited to a standardized testing

environment." TAC ¶ 30. Yusuf does not claim to be an officer "not suited to a standardized testing environment." Rather, he claims that in 2019, he took the sergeant promotion examination and "scored in the first promotional tier, placing him among the highest-scoring candidates and qualifying him for promotion." TAC ¶ 32.

Yusuf alleges that merit promotions were halted in December 2019 because of complaints of "favoritism, cronyism, and lack of transparency." TAC ¶ 33. The merit system was reinstated in July 2021 by Superintendent David Brown, who "explicitly stat[ed] the need to use merit promotions to increase diversity in supervisory ranks." TAC ¶ 34. Yusuf alleges on information and belief that merit system nominators "have access to and regularly review officers' personnel files as part of the nomination and evaluation process." TAC ¶ 36. He alleges further that the City is currently operating under a consent decree,[1] and in April 2022, Independent Monitor Maggie Hickey found that merit promotions were reinstated explicitly to "diversify the ranks," providing "direct evidence of racial considerations driving promotional decisions." TAC ¶ 41.

Yusuf alleges that approximately 30% of the sergeant promotions from the 2019 examination have been through the merit system, totaling 75 officers through 2024. TAC ¶¶ 42–43. Although Yusuf alleges that he received a high score on the 2019 examination, his complaint contains no allegations concerning the 70% of the sergeant promotions from the 2019 examination that were based on written promotional examination scores. He admits that the "primary pathway" to promotion is the written promotional examination. TAC ¶ 62.

Citing CPD demographic data maintained by the Chicago Office of Inspector General, Yusuf alleges that 45% of the CPD is made up of white officers. TAC ¶¶ 51, 53. Nevertheless, of the approximately 75 officers promoted through the merit system from 2019–24, fewer than 5 (approximately 6.7%) were classified as Caucasian while 93% of merit promotions went to officers not classified as Caucasian. TAC ¶ 46, 53. Without mentioning any specific promotion opportunities to which he applied or for which he could have been considered during those years,

[1] *See* Am. Consent Decree, *Illinois v. City of Chicago*, No. 17-cv-6260 (N.D. Ill. July 9, 2026) (Dkt. No. 1383).

Yusuf alleges that despite his high examination score and "exemplary service record," he has been repeatedly bypassed for both merit and standard promotions, and officers not classified as Caucasian, with lower examination scores than his, have received promotions while he has not. TAC ¶¶ 76–77 (quotation in ¶ 76).

**REVERSE DISCRIMINATION CLAIM**

At this point, it appears that Yusuf is making a conventional reverse discrimination claim: he chose "Caucasian" as his race since his initial employment paperwork gave him no better option, and as a result of being perceived as Caucasian, he lost out on promotion opportunities, at least those that were part of the merit system. TAC ¶¶ 11–23, 41–53. While Yusuf gives no hint about why he wasn't promoted based on his examination scores, insofar as he alleges that some promotions were denied to him because he had asserted that he was White, that should be enough to state a reverse discrimination claim. *See Thompson v. Bhd. of Maint. of Way Emp. Div.*, 2025 WL 2522660, at *6 (N.D. Ill. Sept. 2, 2025); *see also Paterakos v. City of Chicago*, 147 F.4th 787, 796 n.1 (7th Cir. 2025).

But Yusuf's live complaint considerably muddies the waters if this is what he means to allege. While Yusuf has alleged that he represented himself as Caucasian in his personnel records, he does not allege that he was perceived as White. Rather, Yusuf alleges that he is "perceived by his colleagues, supervisors, and the public as Middle Eastern or [B]lack based on his name (Mohammad Yusuf), physical appearance, and known Egyptian heritage." TAC ¶ 16. He then posits that "to the extent any decisionmaker perceived [him] as Black/African or applied promotion criteria limited to 'Black or African American' officers, CPD's erroneous designation of Yusuf as 'White' excluded him from consideration under those criteria." TAC ¶ 17.

Yusuf insists throughout his TAC that the reason he was denied promotion was because he was erroneously classified as White on his personnel paperwork and not allowed to change his racial classification. *See, e.g.*, TAC ¶¶ 88, 101, 114. He goes so far as to allege that "Merit System nominators reviewing Yusuf's personnel file see him incorrectly classified as

'Caucasian,'" and that is "how he is categorized for promotion purposes." TAC ¶ 74. Thus, Yusuf is essentially alleging that despite being perceived by his colleagues and supervisors as Middle Eastern or Black, TAC ¶ 16, he was bypassed for promotion because his personnel records, which he alleges the nominators reviewed, erroneously asserted he was White. TAC ¶ 74.

It is not clear to the court that a denial of a promotion claim in which Yusuf maintains that an erroneous statement in personnel records trumps the perception of Yusuf's supervisors is entirely plausible. But is it so implausible that Yusuf should not be allowed to plead it? The court is hardly an expert in CPD promotion practices, especially if, as Yusuf alleges, CPD was making promotion decisions explicitly on racial grounds. If Yusuf believes that he can make such a claim consistent with counsel's Federal Rule of Civil Procedure 11 obligations, he will be allowed to try to do it. It is odd, for sure, but perhaps not clearly implausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## Waiver

The law is absolutely clear that "perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (citing *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009)). It is not enough to make an argument in a skeletal way, leaving it for the court to do counsel's work. *See id.* (quoting *Bank of America, N.A. v. Veluchamy*, 643 F.3d 185, 190 (7th Cir. 2011); other citations omitted). The court finds that the following claims are inadequately supported in Yusuf's Response to the City's Motion to Dismiss, Dkt. No. 63, and are therefore waived:

- First, to the extent Yusuf claims that CPD's failure to offer a Middle Eastern/North African or MENA racial category when he filled out his initial employment paperwork is illegal or unconstitutional, he has provided insufficient argument or authority, and any such claim is therefore waived. Resp. Opp'n Mot. Dismiss 3–4.

- Second, to the extent Yusuf claims that when the City expanded the racial categories available to new hires in 2023–24, it acted illegally or unconstitutionally in refusing to allow him to change the racial category he initially chose from Caucasian to something else, he has provided insufficient argument or authority, and any such claim is therefore waived. *Id.* at 3–4, 12–13.

- Third, to the extent Yusuf alleges that the City compelled his speech in violation of the First Amendment, he cites inapposite cases and fails to explain how the cases he cites support his claim. Yusuf cites only two cases in support of his compelled speech claim: *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943) and *Wooley v. Maynard*, 430 U.S. 705 (1977). Resp. Opp'n Mot. Dismiss 14. *Barnette* held that the First Amendment prohibited defendant from punishing schoolchildren who refused, for religious reasons, to salute the American flag or recite the Pledge of Allegiance. *Barnette*, 319 U.S. at 627. *Wooley* held that the right to speak and the right to refrain from speaking are complementary rights, such that compelling an individual to display the state motto ("Live Free or Die") on his license plate violated his religious or moral beliefs violated the First Amendment. *Wooley*, 430 U.S. at 707–08.

  The court agrees that both these cases stand for the proposition that the state may not constitutionally force an individual to utter or display a message to which he is ideologically opposed, but the court has no idea how to make the leap from these black letter First Amendment principles to anything alleged in this case, described by Yusuf in his response as "the compelled affirmation of a false identity." Resp. Opp'n Mot. Dismiss 14. Whether these cases could be argued to support Yusuf's compelled speech claim is unclear to the court. What is clear is that Yusuf has not done so, and the claim is therefore waived.

- Fourth, to the extent Yusuf attempts to make out a disparate treatment claim by alleging that "allowing gender changes while prohibiting racial corrections" is "pretextual and discriminatory," TAC ¶ 27, or is otherwise illegal or unconstitutional, *see* TAC ¶¶ 24–27, Yusuf has provided insufficient argument or authority, and the claim is therefore waived.

- Fifth, to the extent Yusuf is claiming that he has any rights stemming from the OMB's 2024 revision of Statistical Policy Directive No. 15, TAC ¶¶ 28–30, he has provided no argument or authority, and any such claim is therefore waived.[2]

Yusuf's insistence that the gravamen of his action is the City's refusal to let him choose a race that fits him better than the categories it provided when he was hired makes for a strange and confusing complaint. *See* TAC ¶¶ 73–75. So does his insistence that he was perceived as Black but treated as White for promotion purposes because of statements in his personnel records. However, there can be no question that if he was refused a promotion because of his race (his actual race or his perceived race), he almost certainly has a cause of action. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 313 (2025) (members of majority groups do not have to prove special circumstances to make out a prima facie case of race discrimination); *Boutros v. Avis Rent A Car Sys.*, 2013 WL 3834405, at *7 (N.D. Ill. July 24, 2013) (employer not free to discriminate against an employee for his perceived race, even if his perceived race is not his actual race). Pleading such a case is not complicated, although Yusuf should minimally indicate that a promotion was offered for which he was qualified, he did whatever was required to apply for it, and the job went to someone else. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

---

[2] The City asserts in its Memorandum in Support of its Motion to Dismiss, Dkt. No. 60 at 6, that Statistical Policy Directive No. 15 has no regulatory impact on CPD's hiring and promotion practices. Yusuf has not argued to the contrary, asserting instead only that this Policy Directive revision constitutes "federal recognition . . . that Middle Eastern or North African individuals, including Egyptians, constitute a distinct racial/ethnic category separate from 'White' or 'Caucasian.'" The court has no reason to dispute, as Yusuf alleges, that MENA is a distinct racial/ethnic category.

## CONCLUSION

The City's motion to dismiss the third amended complaint, Dkt. No. 59, is granted for the reasons given above. Yusuf will not be permitted to replead the claims which the court has found he has waived. If he can plead a promotion denial claim consistent with the guidelines set forth in this opinion, he may do so within 28 days, on or before October 13, 2026. Alternatively, if Yusuf does not wish to abandon those claims which the court has found waived, he may elect not to amend and the court will enter judgment on the City's Motion to Dismiss.

Date: September 14, 2026

/s/ Joan B. Gottschall
United States District Judge